[Crim. No. 1638.   Third Appellate District.—June 29, 1938.]

In the Matter of the Application of WILLIAM WILLING, for a Writ of Habeas Corpus.

A. B. Reynolds and Erling S. Norby for Petitioner.

U. S. Webb, Attorney-General, Ralph H. Cowing, Deputy Attorney-General, and Jos. L. Heenan, District Attorney, for Respondents.

PLUMMER, J.—It is hereby ordered that the opinion and orders of this court, filed June 23, 1938, in the matter of this cause, be vacated, annulled and set aside, and the following opinion and orders adopted in lieu thereof:

The petitioner herein was arrested for failure to comply with section 737.5 of the Agricultural Code of the state of California, in that he engaged as a purchaser and distributor of fluid milk, etc., without first having obtained a license therefor, and giving a bond provided for in the section just referred to.

The petition raises the question of the constitutionality of section 737.5 of the Agricultural Code, and bases the objection of the constitutionality of said section on the grounds that section 737.12 of the same code renders the licensing and bonding provisions relative to distributors, discriminatory.

Section 737.5, *supra*, requires every distributor of fluid milk or fluid cream to obtain a license and file a bond in an amount proportionate to the extent of the business conducted by the distributor. Section 735.3 (f) defines a distributor as follows: "Distributor means any person, whether or not such person is a producer or an association of producers, engaged in the business of distributing or handling fluid milk or fluid cream for sale, including persons who pasteurize, bottle or process fluid milk or cream, who distribute fluid milk or fluid cream at wholesale, retail, or otherwise to hotels, restaurants, stores or other establishments for consumption on the premises, to stores and establishments for resale, or to consumers."

Section 737.12, *supra*, eliminates the provisions of section 737.5 from retail stores.

Section 735.3 (g) defines retail stores as retail grocery stores, restaurants, confectioners, or other similar businesses where fluid milk or fluid cream is sold to the general public for consumption off the premises. The act provides for the giving of surety bonds only, which is admitted to be valid if applicable to all persons engaged in the same business.

It is likewise conceded by the petitioner that if the act in question is not discriminatory, or if it were to apply to all persons dealing in fluid milk, it would be constitutional.

The basis of the contention of the petitioner rests upon that portion of the act which eliminates grocery stores, etc., from the provisions thereof, and also upon the further contention that manufacturers of milk products are not included within the provisions of article III of the Agricultural Code. The claim is made that there is no reasonable distinction between the business carried on by a distributor, a manufacturer or a proprietor of grocery stores, etc., and the distributors of fluid milk and fluid cream to consumers.

While the arguments contained in the briefs have taken a somewhat wider course, there is really but one question involved: Is there a reasonable basis for the enactment of a provision which relates to distributors (which we will here-

after, for a little more clarity, call "collector-distributors"), and manufacturers of milk products and grocery-store keepers or others engaged in a similar line of business, so far as the sale of fluid milk or fluid cream is involved? If there is a clear line of demarkation between the manner of conducting business by collector-distributors and manufacturers of milk products, and the exempted persons or businesses referred to in the act, then it is clearly constitutional.

It is admitted that the police powers of the state authorize the legislature to legislate on the subject of the production, processing and distribution of fluid milk and fluid cream, in order that a pure product may be furnished to the consumer, and that the producer may be safeguarded against irresponsible persons who engage in business as collector-distributors. An analysis of the business carried on by collector-distributors, and the manner of conducting business by grocery stores, etc., furnishes a clear exposition of a basis warranting separate classification. The collector-distributor goes to the producer at his dairy barn and obtains so many gallons of milk from the producer, already placed in cans by the producer, conveys the same to a plant where that milk is pasteurized or processed and made fit for human consumption, and the butterfat content contained therein ascertained and determined. The collector-distributor pays nothing to the producer at the time of the collection of the cans containing so many gallons of milk, but after the gallons of milk contained in the cans are pasteurized or processed, and the butterfat contained therein ascertained, a report is made by the collector-distributor to the producer, stating the same, and then, by mathematical calculation, the value of the gallons of milk delivered by the producer to the collector-distributor is made certain, and the amount of the indebtedness of one to the other established. The collector-distributor then takes the milk and distributes it among his customers, so many bottles or cases to one establishment and so many to another, and likewise distributes to customers, morning after morning, so many bottles of milk fit for human consumption.

"Distributing" means parceling out, and as applied to the business conducted by the collector-distributor, we think has a clear and definite meaning, and that the legislature intended that the word "distributor" should apply to and mean, a person who carries on business just as we have herein

stated. The grocers and others referred to in section 737.12, *supra*, conduct business in an entirely different manner. They have nothing to do with the manufacture or pasteurizing of the fluid milk or fluid cream, or rendering the same fit for human consumption; nor do they engage in the distribution of fluid milk or fluid cream in the ordinary sense of the word, or in the sense in which the legislature used that term. A grocer simply buys fluid milk or fluid cream already pasteurized and processed, by the case, or so many bottles, at a fixed price known both to the seller and to the buyer at the very time of the transaction. The grocer is no more a distributor of fluid milk or fluid cream than he is a distributor of sugar, coffee, or other products dealt in in that line of business. A patron comes to the store, calls for a bottle of milk or a bottle of cream, and the product is passed over the counter just the same as passing over the counter so many pounds of sugar, at a definite and stated price.

Again, the manufacturer of milk products cannot be brought within the terms of a distributor of fluid milk or fluid cream, by any reasonable construction of those terms. The manufacturer of milk products such as butter, cheese or ice cream, is no more engaged in the same line of business as a collector-distributor of fluid milk and fluid cream, than a manufacturer of woolen cloth is engaged in the same line of business as the jobber who buys wool from the producer and sells it to factors or manufacturers. The reasons for the classification appeal simply to the legislative body and not to the courts. Yet there are apparent reasons for the classification if we refer only to the protection of the producer of fluid milk and fluid cream; when the collector-distributor has completed a transaction, the fluid milk and the fluid cream of the producer is immediately placed beyond any legal process that might be sought by the producer. Where milk products and cream products are manufactured, such is not the case. When the product is completed by the manufacturer, the product is there subject to any legal process that might be obtained by the producer in the event that he had not been paid for his product or in the event that payment had become insecure.

Again, in so far as the collector-distributor of fluid milk and fluid cream is concerned, it is apparent that different rules and regulations should be applied in order that the

product delivered to the consumer should be as nearly one hundred per cent fit for human consumption as is possible. This is rendered necessary by reason of the fact that inspection and supervision of the handling of the fluid milk and fluid cream by the collector-distributor, in point of time is much more limited and circumscribed than the handling of the same product by the manufacturer. These are questions which we think the legislature was justified in taking into consideration in determining that the collector-distributors of fluid milk and fluid cream may properly be placed in a class by themselves. Referring again to our illustration, the manufacturer of woolen goods uses the same raw product as the jobber who buys wool for future disposition, but the process is entirely different and the resulting product is entirely different. The same is true as between the collector-distributor of fluid milk and fluid cream and the manufacturer of by-products therefrom.

The foregoing shows that there is a definite line of demarkation between the business carried on by a collector-distributor, a manufacturer of by-products, and the business engaged in by anyone of the persons or establishments mentioned in section 737.12, *supra*. A large portion of the business carried on between the producer and the collector-distributor is founded upon the faith of the producer in the collector-distributor. This faith is ordinarily called credit, but it is really faith on the part of the producer that the collector-distributor will honestly ascertain the butterfat content of the product sold and delivered by the producer to the collector-distributor, and honestly thereafter make report of the same, and final full payment. Nothing of that kind appears in the transaction between a manufacturer and producer, because the product still remains in evidence after the transaction has been completed. Nor does anything of the kind appear in the transaction between anyone of the exempted persons and the customer who comes in and buys a bottle of fluid milk or fluid cream that has passed over the counter, and takes it home for final consumption. It being admitted in the briefs that if there is a reasonable basis for the classification made in the act, and made only to apply to collector-distributors and not to the other persons or businesses mentioned herein, the constitutionality of the act should be upheld, further discussion seems unnecessary.

In view of what we have stated.it is clear to us that such a reasonable basis exists, and that there is a clear line of demarkation between the kind of business carried on by the collector-distributor and manufacturers and exempted persons named in section 737.12, *supra*.

The petition is denied; the proceedings dismissed; and the petitioner remanded.

Pullen, P. J., and Thompson, J., concurred.