[Crim. No. 4185. In Bank.—January 18, 1939.]

In the Matter of the Application of WILLIAM WILLING, for a Writ of Habeas Corpus.

Erling S. Morby and A. B. Reynolds for petitioner.

U. S. Webb, Attorney-General, Ralph H. Cowing, Deputy Attorney-General, and Joseph L. Heenan, District Attorney (Yuba County), for Respondent.

SEAWELL, J.—Petition for writ of *habeas corpus*. Petitioner was arrested for violating section 737.5 of the Agricul-

tural Code, in that as a distributor he purchased fluid milk from a producer without obtaining a license from the state director of agriculture and furnishing a bond. The District Court of Appeal, Third Appellate District, heretofore issued a writ, but after hearing dismissed the proceeding and remanded petitioner to custody. (*In re Willing,* 27 Cal. App. (2d) 367 [80 Pac. (2d) 1027].)

Petitioner contends that the section is unconstitutional class legislation for the reason that while requiring distributors purchasing milk from producers to obtain a license and file a bond, it does not apply to retail stores purchasing milk from producers, nor to persons purchasing milk from producers for manufacturing purposes, and for the further reason that it requires a surety company bond, thereby denying the right to file a bond with personal sureties. The latter contention is concluded by *In re Cardinal,* 170 Cal. 519, 526 [150 Pac. 348, L. R. A. 1915F, 850], where this court upheld an ordinance provision which required the operator of a jitney bus to give a surety company bond to pay all damages arising from negligent operation as a condition to obtaining a license. (See, also, *Argo Oil Corp.* v. *Atwood,* 274 Mich. 47 [264 N. W. 285] ; *Ferguson-Hendrix Co.* v. *Fidelity & Dep. Co. of Md.,* 79 Wash. 528 [140 Pac. 700].)

The bond required by section 737.5 is conditioned on the payment of amounts due to producers for fluid milk and fluid cream purchased by the distributor, and must be filed before a license is issued to him. An action may be brought on the bond by the director of agriculture on behalf of producer-creditors. Said license is in addition to all licenses required by other provisions of division IV of the Agricultural Code. Sections 492 and 621, 622, provide for permits and licenses to be issued after investigation of sanitary conditions of plants dealing in milk and milk products.

Section 737.5 is found in a chapter of the Agricultural Code entitled ''Stabilization and Marketing of Fluid Milk and Fluid Cream''. It authorizes the director of agriculture to establish marketing areas and, upon the application of those who produce 65 per cent of the milk of an area, or 65 per cent of the cream, to put into effect a milk or cream stabilization and marketing plan. Such plan must provide minimum prices to be paid producers by distributors, and may provide for an equalization pool with uniform prices for milk pur-

chased for pasteurization. (Secs. 735, 736.4, Agricultural Code.) The director may also fix minimum wholesale prices for sale of milk and cream by distributors to retail stores, and minimum retail prices for sale by distributors and retail stores to consumers. The license and bond provisions of section 737.5 apply regardless of whether a stabilization and marketing plan is in effect in an area.

The purpose of said chapter, as announced in section 735, is to eliminate economic disturbances and unfair trade practices in the milk industry which threaten both the quality and adequacy of the supply of fluid milk and cream. The section declares that health regulations alone are insufficient to prevent disturbances which threaten to destroy and seriously impair the quality and supply of milk. Thus provisions which protect the producer by establishing a fair price to him and affording him security for payment of the price due him for milk and cream by means of a bond, are incident to the broader purpose to protect the public milk supply. Economic security to producers will tend to encourage compliance on their part with sanitary regulations and the maintenance of dairy herds sufficient to provide an adequate milk supply at reasonable prices to consumers.

The price-fixing provisions are not under attack. But since they are part of the plan to afford a measure of economic security to those engaged in the milk industry in the interest of protecting the public milk supply, of which plan section 737.5, providing for a bond to secure payment to the producer is another feature, it is pertinent to cite the recent decisions of the United States Supreme Court sustaining statutory provisions for the fixing of milk prices. (*Nebbia* v. *New York,* 291 U. S. 502 [54 Sup. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469]; *Borden's Farm Products Co.* v. *Ten Eyck,* 297 U. S. 251 [56 Sup. Ct. 453, 80 L. Ed. 669]; *Highland Farms Dairy* v. *Agnew,* 300 U. S. 608 [57 Sup. Ct. 549, 81 L. Ed. 835]; see, also, 7 So. Cal. L. Rev. 325.)

We are of the view that the weight of authority, as well as the decisions of this state, sustain the right of the state to require of those engaged in the distribution of important food products a license and bond to pay producers. (*People* v. *Perretta,* 253 N. Y. 305 [171 N. E. 72, 84 A. L. R. 636]; *People* v. *Beakes Dairy Co.,* 222 N. Y. 416 [119 N. E. 115, 3 A. L. R. 1260]; *Payne* v. *State of Kansas,* 248 U. S.

112 [39 Sup. Ct. 32, 63 L. Ed. 153], affirm. *State* v. *Mohler,* 98 Kan. 465 [158 Pac. 408] ; *Hickey* v. *Levitan,* 190 Wis. 646 [210 N. W. 111, 48 A. L. R. 434] ; *Ferguson-Hendrix Co.* v. *Fidelity & Dep. Co., supra; Lasher* v. *People,* 183 Ill. 226 [55 N. E. 663, 75 Am. St. Rep. 103, 47 L. R. A. 802] ; *State* v. *Wagener,* 77 Minn. 483 [80 N. W. 633, 778, 1134, 77 Am. St. Rep. 681, 46 L. R. A. 442] ; *contra: State* v. *Porter,* 94 Conn. 639 [110 Atl. 59] ; *Maine* v. *Oil Tavern Farm, Inc.,* 113 Me. 468 [180 Atl. 473, 101 A. L. R. 810] ; note, 10 So. Cal. L. Rev. 83.)

In this state the Deciduous Fruit Dealers' Act (Stats. 1929, p. 665, now secs. 1285–1288, Agr. Code) requires dealers in deciduous fruits to obtain a license and file a bond to comply with all contracts with growers and to account for proceeds. The validity of these provisions was upheld in *People* v. *Jarvis,* 135 Cal. App. 288, 312 [27 Pac. (2d) 77]. (See, also, *People* v. *Perry,* 212 Cal. 186 [298 Pac. 19, 76 A. L. R. 1331], involving other provisions of the act.) In *Moulton* v. *Williams Fruit Corp.,* 218 Cal. 106 [21 Pac. (2d) 936], this court affirmed judgment against the surety on a bond filed under the Produce Dealers' Act (Stats. 1927, p. 1812, now sections 1261–1273, Agr. Code) after failure of the dealer to pay the grower a guaranteed price.

This brings us to petitioner's contention that the exemption of retail stores and of purchasers of milk for manufacturing into dairy products renders our bond statute invalid. The exemption of retail stores is by express provision. (Sec. 737.12, Agr. Code.) Retail stores purchase milk in the final bottled form. Milk can be sold by retail stores only in standard bottles (sec. 479, Agr. Code), and must be bottled mechanically where pasteurized in bottles sterilized on the premises where filled. (Secs. 479, 482.) If one engaged in the retail store business should also maintain a plant for the processing and bottling of milk, we do not doubt that such operations, constituting a different business than the conduct of a retail store, would subject such operator to the license and bond requirements of section 737.5. (See definition of distributor, sec. 735.3, subd. f.) The result is that a retail store which is not subject to the bond requirement purchases direct from a producer only where such producer himself pasteurizes and bottles his milk, that is, where the producer is a producer-distributor. According to respondent, retail

stores buy from producers less than five per cent of all milk going to consumers. The usual course through which milk sold at a retail store has passed is from producer to distributor to retail store. The distributor, unlike the retail store, purchases milk in bulk and thereafter pasteurizes and bottles it.

This circumstance—that retail stores not subject to the license and bond provisions purchase from a producer only when he is also a distributor of bottled milk—furnishes a constitutional basis for their exemption. The statute does not require a bond to secure payment for milk purchased from a distributor, but only for milk purchased from a producer. The selection of the producer of food products as the special object of legislative protection designed to safeguard the food supply has long been sustained, and is not challenged by petitioner herein. (Cases cited, *supra*.) The effect of the exemption of retail stores, therefore, is to put producing distributors in the same category with non-producing distributors, for whose protection no bond is required, and to place all purchases of bottled milk by retail stores, whether from a producing or non-producing distributor, on the same footing.

■ The separate classification of distributors and retail stores is, therefore, constitutional. It is only where class legislation is arbitrary and unreasonable that it is invalid. (*Bacon Service Corp.* v. *Huss*, 199 Cal. 21 [248 Pac. 235]; *In re Weisberg*, 215 Cal. 624, 629 [12 Pac. (2d) 446]; *Lloyd Garretson Co.* v. *Robinson*, 178 Wash. 601 [35 Pac. (2d) 504, 506].)

In its brief the state says that bulk milk is sold according to butter fat content, ascertained by the purchaser, upon whose honesty the producer is, therefore, dependent, whereas bottled milk is sold to retail stores at a fixed price per bottle which can be computed on delivery and a cash sale provided for, and that this distinction furnishes additional grounds for exempting retail stores from filing a bond to secure payment for milk purchased. But these facts were not established by evidence, are incomplete, in particulars are not without dispute, and are not facts of which the court can take judicial notice. Therefore we decide the case without reference to them.

■ The other exemption upon which petitioner relies in support of his claim of unconstitutionality—the exemption of

those purchasing milk from producers for manufacture into dairy products—results from the fact that section 737.5 requires a bond and license of "distributors". The term distributor, as defined by section 735.3, subdivision f, refers to distributors of fluid milk and cream, and does not include those who manufacture and sell dairy products.

The purpose of affording economic protection to the producer of milk, as announced in section 735, is to safeguard the public supply of fluid milk and cream. We are of the view that it was competent for the legislature to afford safeguards to the supply of fresh milk and cream without giving the same protection to manufactured dairy products, such as cheese, condensed milk, butter, ice cream, ice milk and flavored milk drinks, which in the main may be said to be less important in the public diet than fresh fluid milk and cream, largely the food of infants. That such products are also important foods is evidenced by the numerous provisions in regard to them in divisions IV and VI of the Agricultural Code. But it is not required that the legislature give to said products the identical protection given to fresh fluid milk and cream. It is also suggested as a possible reason for not requiring a bond of manufacturers, that manufactured dairy products are relatively less perishable than fluid milk and cream, and by reason thereof constitute an asset of the debtor-purchaser which the creditor-producer may reach.

If it should be held by reason of the definition of fluid milk contained in section 735.3, subdivision b, that a manufacturer who sells the products there listed, to wit, ice cream, ice milk, flavored milk drinks, buttermilk, cottage cheese and butter, is selling fluid milk and cream, and is therefore a distributor under section 735.3, subdivision f (and this seems a strained construction), the result would be that manufacturers of the named dairy products would be subject to the license and bond requirements of section 737.5. With the validity of such a classification within the class of manufacturers we are not here concerned. If invalid the result would be that *all* manufacturers would be free from obtaining the license and filing a bond. But petitioner makes no claim that he is a manufacturer of dairy products. ■ A party complaining must belong to the class discriminated against. (*In re Weisberg, supra; Rox-Woodsum Lumber Co.* v. *Bank*

**598**

*of America etc. Assn.,* 7 Cal. (2d) 14 [59 Pac. (2d) 1019];
5 Cal. Jur. 623.)

The writ is discharged and the petitioner is remanded to
custody.

Shenk, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.