[Sac. No. 7024. In Bank. Feb. 9, 1961.]

SILVIO MISASI et al., Appellants, v. W. C. JACOBSEN et al., Respondents.

Paul A. Schumann, Leland B. Groezinger, Allan, Miller, Groezinger, Keesling & Martin, Guernsey Carson and Emil Steck, Jr., for Appellants.

Vaughan, Brandlin & Baggot, J. R. Vaughan, Tuttle, Tuttle & Taylor, Robert G. Taylor, E. R. Hoerchner, Charles K. Hackler, Brundage, Hackler & Flaum and George E. Atkinson, Jr., as Amici Curiae on behalf of Appellants.

Stanley Mosk, Attorney General, Paul M. Joseph, Deputy Attorney General, Lawrence Edwards and Alan Short for Respondents.

Minton, Minton & Farrell and D. Ted Farrell as Amici Curiae on behalf of Respondents.

GIBSON, C. J.—An order of the Director of the Department of Agriculture setting minimum prices for fluid milk in the San Joaquin County marketing area contains a provision directing that the minimum retail prices for milk sold f.o.b. distributor's processing plant shall be two cents per quart below specified minimum retail store carry-out prices, and plaintiffs, who operate retail grocery stores in Stockton, appeal from a judgment which upholds the validity of the provision.* Defendants are the director, two other officials of the department, and four Stockton distributors (hereafter referred to as the "industry defendants") who own milk processing plants and sell milk at retail on the premises at the minimum prices set by the provision in question.

The trial court found in substance as follows: The industry defendants are licensed as distributors under the milk control law and sell, in addition to milk, a limited number of food products at their processing plants. Milk is the principal item sold, and the sale of other products is incidental to its sale. The method of milk distribution used by the industry defendants is distinct from that used by retail grocery stores, the services they render to consumers are different, and their reasonably necessary costs in selling milk are substantially less than those of such stores. The court concluded that the industry defendants do not operate retail stores but act as distributors as defined in the Agricultural Code, that the provision of the order setting separate minimum prices for retail sales of milk f.o.b. processing plant is valid, and that the industry

---

*The provision in question reads: "The minimum retail prices for fluid milk sold f.o.b. distributor's processing plant shall be eight cents ($0.08) per gallon container; four cents ($0.04) per half-gallon container; two cents ($0.02) per quart container; and one cent ($0.01) per pint container below the minimum retail store carry-out prices provided in Schedule 1."

defendants are entitled to sell f.o.b. their plants at those minimum prices.

Chapter 17 of division 6 of the Agricultural Code imposes on the director the duty to prescribe minimum retail prices at which milk shall be sold to consumers by distributors as well as by retail stores. (§§ 4350, 4353.) Section 4205 provides that the powers conferred in that chapter shall be liberally construed and, further, that the terms and conditions under which distributors and retail stores shall be permitted to sell and distribute milk "shall be those which will . . . insure an adequate and continuous supply of pure fresh wholesome fluid milk and fluid cream to consumers thereof at fair and reasonable prices."

Section 4360 provides that the minimum retail and wholesale prices to be established for distributors in a marketing area and the minimum retail prices for retail stores therein shall be sufficient, but not more than sufficient, to cover costs, as such costs are described in section 4355, according to method of distribution, and reasonable return upon necessary capital investment; provided, however, that when the director determines that such a price will not effectuate the purposes of the act he shall establish minimum prices which are higher or lower than those sufficient to cover the costs and reasonable return if he finds in writing that his action will insure adequate supply at prices no higher than necessary and will not induce unfair competition.

Section 4355 provides that in determining minimum prices the director shall take into consideration among other economic factors the reasonably necessary costs of handling fluid milk incurred by *distributors,* including all costs of hauling, processing, selling and delivering and reasonable return on necessary capital investment, *for each of the several methods of distribution used in such marketing area* (subd. (e)) and the reasonably necessary cost of handling fluid milk incurred by *retail stores* (subd. (g)).

Section 4216 defines a "distributor" as "any person, whether or not such person is a producer or an association of producers, who purchases or handles fluid milk or fluid cream for sale, including brokers, agents, copartnerships, cooperative corporations and incorporated and unincorporated associations. The definition of 'distributor' shall not include any of the following: (1) *Any retail store that is not engaged in processing and packaging fluid milk or fluid cream. . . ."* (Italics added.)

Section 4218 provides that "retail store" means "any person or persons owning or operating a retail grocery store, restaurant, confectionery, or other similar business, where fluid milk or fluid cream is sold to the general public for consumption off the premises."

Sections 4350 and 4353, which require the setting of minimum retail prices for both distributors and retail stores, show clearly that a processor who, like the industry defendants, sells milk at retail may be a distributor as distinguished from an operator of a retail store. Plaintiffs contend that the record establishes as a matter of law that the businesses operated by the industry defendants are retail grocery stores within the meaning of section 4218. We do not agree. Whether a business is "similar" to "a retail grocery store" within the meaning of section 4218 is primarily a question of fact, and the trial court has determined, on the basis of substantial evidence, that the businesses operated by the industry defendants are different in character from retail grocery stores. Their costs in selling milk are less than those of such stores, and they render a lesser service to consumers. They sell milk only at their four processing plants, whereas there are a great number of retail grocery stores which are located throughout the marketing area and therefore nearer to the homes of most consumers. Each industry defendant sells only its own brand of milk whereas grocery stores generally sell a variety of brands, and the industry defendants sell only a limited number of food products incidental to the sale of milk, which is the principal product, whereas in grocery stores milk is only one of the hundreds of products available to the customers.

Even if the industry defendants, contrary to the findings of fact, could be considered operators of retail stores, it would not necessarily follow that they must be subject to the same minimum prices as retail stores that are not combined with milk processing plants.  ▇▇ The exclusionary provision of section 4216, insofar as pertinent here, excepts from the definition of "distributor" only a "retail store" not engaged in "processing and packaging fluid milk or fluid cream," and it thus recognizes that one who operates a combination of a retail outlet and a processing plant may be treated as a distributor. ▇▇ In this connection it should be noted that section 4355 provides that, as to the determination of minimum prices for distributors, costs shall be taken into consideration for each of the several methods of distribution used, whereas with respect to retail stores the section does not pro-

vide for consideration of costs on such a basis. The cited provisions taken together indicate a legislative intent that the term "distributor" should cover a broad category, that the various methods of distribution must be considered in determining minimum prices for distributors, and that selling at retail by a processor at his plant is one of the methods and warrants a minimum price different from the one applicable to retail stores not combined with processing plants. The correctness of this conclusion is further demonstrated by the fact that, where a person can come within two categories established by the code and the Legislature intended to require the director to treat the person as coming within one to the exclusion of the other, depending upon the type of operation, express directions to that effect have been set forth. (§ 4217 [relating to persons who are both producers and distributors].)

Of particular importance here is the rule that the administrative construction of a statute by those charged with its interpretation and enforcement is entitled to great weight, and courts will generally not depart from such an interpretation unless it is clearly erroneous. (*Richfield Oil Corp.* v. *Crawford,* 39 Cal.2d 729, 736 [249 P.2d 600].) As recognized in *Knudsen Creamery Co.* v. *Brock,* 37 Cal.2d 485, 495 [234 P.2d 26], the control of the marketing of milk involves complex problems and the Legislature intended to give the director wide discretion in dealing with those problems. The director has for many years construed the code as permitting minimum prices for retail sales f.o.b. processing plant different from the prices applicable to retail stores, and there has been a comparable long-standing administrative construction in the field of retail sales f.o.b. dairy ranch. As of 1955 orders in accordance with this construction were in effect in 11 marketing areas of the state so far as concerns sales f.o.b. plant and in all marketing areas with respect to sales f.o.b. ranch. (Report of Joint Legislative Committee on Agriculture and Livestock Problems (1955), p. 138.) In establishing the minimum prices for the San Joaquin County marketing area the director found that the prices set, which were higher than sufficient to cover the costs described in section 4355, would tend to maintain sufficient distributing facilities without requiring consumers to pay more than was necessary to maintain such facilities, that they would not induce unfair competition, and that they would tend to encour-

age orderly and efficient marketing of fluid milk. No substantial evidence contrary to these findings was introduced.

The director's findings show that his order tends to accomplish the purpose of the milk marketing provisions of the code, namely, that "the people shall be able to purchase milk at the lowest price at which enough distributors operating with average efficiency will be able to do business at a reasonable profit so as to supply the demand of all the consumers in the marketing area." (*Challenge Cream etc. Assn.* v. *Parker,* 23 Cal.2d 137, 141-142 [142 P.2d 737, 149 A.L.R. 1203].) Invalidation of the minimum price in question would frustrate that purpose because consumers, who would be compelled to pay the industry defendants two cents more for a quart of milk, would not be able to purchase milk "at the lowest price" consonant with the marketing conditions contemplated by the code. Section 4205 provides that the director's powers shall be liberally construed, and we are satisfied that there is no sound reason to reject his interpretation of the code or invalidate his action here.

In *Challenge Cream etc. Assn.* v. *Parker,* 23 Cal.2d 137 [142 P.2d 737, 149 A.L.R. 1203], relied upon by plaintiffs, it was held that a distributor, who delivered milk in fibre containers, could not be compelled by the director to charge one-half cent more per container than the minimum wholesale price for milk delivered in glass containers, although the use of fibre containers resulted in a cost increase in excess of one-half cent. The court reasoned in effect that the use of different containers did not constitute a variation in the method of distribution within the meaning of the act, that the difference in cost was not related to the meeting of different needs of consumers in terms of the quantity, quality, or type of delivery, and that, since the kind of container would be changed in the event of any loss from its use, the higher price would not promote the statutory purpose of assuring profitable operation of sufficient facilities to meet consumer demands at prices no higher than necessary. (23 Cal.2d at p. 143 et seq.) Such reasoning is not applicable in the present case. As we have seen, the trial court has determined on the basis of substantial evidence that the industry defendants differ from the operators of retail grocery stores not only with respect to costs but also with respect to the method of distribution used and the type of services rendered to consumers. In view of the uncontroverted findings of the director with respect to the maintenance of an adequate supply of milk at a proper price, this is a case in which his

action tends to accomplish the statutory purpose as described in the Challenge Cream decision, and invalidation of the price set would frustrate that purpose.

The judgment is affirmed.

Traynor, J., White, J., and Dooling, J., concurred.

McCOMB, J.—I dissent.

It is obvious that the majority holding will place a restriction upon free enterprise which will interfere with the liberty of contract guaranteed by the due process clause in the Constitution of the United States and constitute an arbitrary and unreasonable restraint upon trade.

The result will be that in the long run the average citizen and taxpayer will have to pay a higher price for milk than he otherwise would if the parties were left free to engage in unlimited competition with each other.

Private business should be encouraged to act in such a manner that the average citizen and taxpayer may be able to purchase a commodity at the lowest price which will permit the producer to supply it at a reasonable profit to himself.

In the present case plaintiffs are retail grocery stores doing business in metropolitan Stockton. Defendants (other than State of California Department of Agriculture officials) are distributors, who operate milk processing plants within metropolitan Stockton and also operate retail food businesses at their respective plants. These defendants will be referred to herein as the "industry defendants."

Plaintiffs and the industry defendants are located in the same retail trading area, and their principal business is the retail sale of fluid milk and other food products to carry-out consumers from fixed retail sales locations. The industry defendants carry a much more limited range of other food products than plaintiffs, but the evidence shows that they sell eggs, orange juice, dressed poultry, bread, certain other pastries and dairy products, in addition to fluid milk.

By virtue of provision 2 of the San Joaquin County marketing area minimum retail price order for fluid milk[1] [pur-

---

[1]Provision 2 reads: "The minimum retail prices for fluid milk sold f.o.b. distributor's processing plant shall be eight cents ($0.08) per gallon container, four cents ($0.04) per half-gallon container, two cents ($0.02) per quart container, and one cent ($0.01) per pint container below the minimum retail store carry-out prices provided in the applicable Schedule 1 or 2 of Table 1 of this Section."

portedly pursuant to the milk stabilization and marketing plan (Agr. Code, § 4200 et seq.)] promulgated by defendant Director of Agriculture, the industry defendants sell fluid milk to the general public at retail at a price two cents per quart less than plaintiffs are permitted to sell by such order. Plaintiffs are thus compelled to charge for fluid milk a higher price than the industry defendants may charge for the same quantity and quality of fluid milk sold to the same class of consumers in the same retail trading area.

Plaintiffs filed a declaratory relief action, wherein they sought to have said provision 2 declared void. Judgment was rendered against them, and they appeal, contending that said provision produces lack of uniformity, results in unfairness in setting minimum retail prices for fluid milk, and is void as being beyond the scope of the director's power to promulgate.

*Question: Are the industry defendants entitled to sell fluid milk at retail, at stores where they also sell other food products, at the prices specified in provision 2 of the price order?*

*No.* The Director of Agriculture is required by section 4360 of the Agricultural Code to establish minimum wholesale and retail prices for distributors in the area and minimum retail prices for retail stores therein. The prices set may vary according to method of distribution.

It is a well-settled principle of statutory construction that a specific provision relating to a particular subject will govern with respect thereto as against a general provision, even though the latter standing alone would be broad enough to include the subject. (*Rose* v. *State,* 19 Cal.2d 713, 723 [5] [123 P.2d 505]; *Neuwald* v. *Brock,* 12 Cal.2d 662, 669 [86 P.2d 1047]; Code Civ. Proc., § 1859; 45 Cal.Jur.2d (1958) Statutes, § 119, p. 628.)

The statute here involved has a specific provision relating to the establishment of minimum retail prices for retail stores. No exception therefrom is made. Accordingly, the price schedule established for this category is controlling for all retail stores in the area, including those operated by persons otherwise functioning as distributors.

The industry defendants contend that because they maintain processing plants at their respective store locations and hence have no overhead for delivery costs, they are using a different method of distribution and are entitled to the establishment of a separate price schedule permitting them to charge less than the minimum prices prescribed for retail stores.

In determining what method of distribution is used, we must look only to the means by which the seller distributes the product to the purchaser. Obviously, the manner and cost of acquisition by the seller are unimportant in determining what method he has used to distribute the product.

In *Challenge Cream etc. Assn.* v. *Parker,* 23 Cal.2d 137, 143 et seq. [142 P.2d 737, 149 A.L.R. 1203], it was held that a difference in container costs within the same type of operation was not a basis for the director to fix a different minimum wholesale price. Under the rule laid down in that case, it is clear that the director has no authority to establish a different price schedule within a given method of distribution on the basis that some of the sellers have a lower overhead than others.

Under the theory of the industry defendants, retail home delivery sales made by distributors who are also producers, and hence incur no overhead costs for delivery to the processing plant, would constitute a different method of distribution from retail home delivery sales by distributors who purchase milk from producers, and the director would be warranted in setting lower minimum prices for the producer-distributor group. Obviously, the avowed purpose of the act to eliminate unfair, unjust, destructive and demoralizing trade practices in this field (*Challenge Cream etc. Assn.* v. *Parker, supra,* p. 140 et seq.) would be defeated if such distinctions were permitted.

As hereinabove pointed out, plaintiffs and the industry defendants all sell fluid milk at retail to carry-out customers at fixed store locations at which other food products are also sold. Accordingly, they use the same method of distribution and must be governed by the same price schedule.

This conclusion appears to be in accord with the legislative intent. Such intent appears in the following Agricultural Code sections: Section 4360, subdivision (b) ("That such minimum prices will not tend to induce or authorize the development of unfair trade practices, unfair competition, conditions of monopoly . . .") ; section 4201 (". . . it is the policy of this State . . . to eliminate . . . unfair and destructive trade practices . . .") ; section 4355, subdivision (g) (In determining costs of retail stores the director shall take surveys of sufficiently representative stores) ; and section 4360 (Minimum prices shall be established "according to method of distribution.")

The industry defendants contend that they are not operating

retail stores; but the trial court, although it made certain conclusions to that effect, found that they engage as retailers in the sale of fluid milk and other food products to customers from fixed store locations.[2] Accordingly, we are not dealing with a situation where a distributor is selling at retail nothing but milk.

Section 4218 of the Agricultural Code reads: " 'Retail store' means any person or persons owning or operating a retail grocery store, restaurant, confectionery, or other similar business, where fluid milk or fluid cream is sold to the general public for consumption off the premises.''

Since section 4218 classifies as retail stores all businesses similar to a grocery store, restaurant or confectionery, it is obvious that the Legislature intended all store or fixed location type sellers of fluid milk and other food products to carry-out consumers to be classed as retail stores. Size, type and shape are immaterial. It is evident that a coffee shop, hamburger stand, fountain, juice bar, delicatessen, general store, supermarket, etc., are intended by the Legislature to be "retail stores.''

The fact that the industry defendants operated fluid milk processing plants upon their respective properties would not prevent their also operating retail stores thereon, as the court in fact found they did. (*Cf. In re Willing*, 12 Cal.2d 591, 595 [3] [86 P.2d 663].)

It is a matter of common knowledge that frequently wholesale and retail stores, or manufacturing plants and retail stores, are operated by the same owners at the same location.

The industry defendants are set up for a customer drive-in operation, and some of their sales are made by serving the customer directly in the customer's car. The rendition of this additional service to the customer clearly does not warrant a lesser charge to him and does not change the fact that the sales

[2]Finding 13 reads in part: "[T]he industry defendants did, and now do, sell at retail at their respective plant premises a limited number of other food products in addition to fluid milk but fluid milk was, and now is, the principal, primary and dominant food item sold by the industry defendants at their said respective plant premises and the sale of such other food items was and now is incidental to the sales of fluid milk."

Finding 15 reads: "That it is true that the industry defendants at all times in the complaint mentioned did, and now do, respectively make retail sales of fluid milk to carry-out consumers from fixed retail locations, to-wit, their said respective fluid milk processing plants."

are being made to carry-out customers at retail at fixed store locations where other food products are also sold.

For the foregoing reasons I would reverse the judgment.

Schauer, J., and Peters, J., concurred.

Appellants' petition for a rehearing was denied March 8, 1961. Schauer, J., McComb, J., and Peters, J., were of the opinion that the petition should be granted.