[Civ. No. 28448.   Second Dist., Div. One.   Dec. 7, 1966.]

AUTOMATIC CANTEEN COMPANY OF AMERICA, Plaintiff and Appellant, v. THE DEPARMENT OF AGRICULTURE et al., Defendants and Respondents.

Moore & Lindelof and Christopher Minor Moore for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Walter S. Rountree, Assistant Attorney General, and A. Wallace Tashima, Deputy Attorney General, for Defendants and Respondents.

FOURT, J.—The Department of Agriculture of the State of California initiated an action whereby it was determined that the fluid milk and cream distributor's license held by Automatic Canteen Company of America (hereinafter called Automatic Canteen) should be revoked. Automatic Canteen sought a writ of mandate and stay order from the superior court to reverse that decision and herein appeals a judgment in favor of respondent, Department of Agriculture of the State of California, its director and The Bureau of Milk Stabilization (hereinafter referred to collectively as Director.)

The trial court "exercising its independent judgment on the evidence," held that the Director's findings were supported by the weight of the evidence and that Automatic Canteen fails to meet the requirements and is neither qualified for nor entitled to be licensed as a distributor of fluid milk and fluid cream. The superior court further concluded as a matter of law that section 4216 of the Agricultural Code is neither too vague nor too indefinite or ambiguous to be enforcible; that the word "establishment" as used therein includes any person not actively engaged in processing and packaging fluid milk or fluid cream who owns, operates or

controls any establishment where such products are sold only for consumption on the premises; that a "division" of a corporation is not a person as defined in section 4222 of the Agricultural Code and cannot therefore be licensed as a distributor of fluid milk and fluid cream separate and apart from its parent corporation; that the divisions of the parent corporation must be considered collectively in determining the qualifications of the parent for a distributor's license.

The only issue presented on this appeal is whether section 4216 of the Agricultural Code, which defines a distributor and lists those excluded from qualification, was correctly interpreted and applied to Automatic Canteen. That section provides in pertinent part: " 'Distributor' means any person who purchases or handles fluid milk or fluid cream for processing, manufacture or sale, including brokers and agents. The definition of 'distributor' shall not include any of the following: . . . (2) any establishment where fluid milk or fluid cream is sold only for consumption on the premises, that is not actively and directly engaged in processing and packaging fluid milk or fluid cream, . . ."

The undisputed facts were submitted on stipulation before the Department of Agriculture. On July 12, 1963, in response to the application of Automatic Canteen for a fluid milk and fluid cream distributor's license for its Compton operation, the Regional Administrator of the Bureau of Milk Stabilization filed an accusation with the Department of Agriculture directed at the distributor's license held by the company for its principal address in Oakland under the name of "Canteen Division of Automatic Canteen Company of America," alleging therein that Automatic Canteen was not qualified to hold such a license. Thereafter Automatic Canteen withdrew its application as to the Compton address and the Director, following a hearing on the subject, revoked its Oakland license.

Automatic Canteen is a Delaware corporation which first qualified to do business in California on April 11, 1962, and on January 1, 1963, initially received milk distributor's license No. 7442 under the name of "Canteen Division of Automatic Canteen Company of America" qualifying it for the 1963 calendar year. At least two years prior thereto Canteen Company (hereinafter called Canteen), a Delaware corporation and a wholly owned subsidiary of Automatic Canteen, had been qualified to do business in this state and held milk

distributor's license No. 7442 as Automatic Canteen's predecessor. It appears that in the spring of 1961 or 1962 Automatic Canteen liquidated both Canteen and another more recently acquired company known as Nationwide Food Service Inc. (hereinafter called Nationwide), and merged both into the parent company.

Canteen and Nationwide are no longer separate entities, but each is presently operated as a functional and autonomous division of Automatic Canteen. These divisions do not have separate officers or directors, but do maintain separate bank accounts and separate books and accounting systems. While Canteen claims to perform the functions customarily attributed to a milk distributor, Nationwide, which neither purchases nor uses fluid milk purchased from or by Canteen, operates in-plant restaurant facilities and purchases its milk requirements therefor at wholesale prices.

Canteen operates and maintains automatic vending machines owned by the parent company, Automatic Canteen, which dispense a variety of prepackaged food and nonfood products principally to employees at industrial plants and commercial facilities. These machines are installed on institutional premises pursuant to an agreement with the management; Canteen maintains and services the machines to provide commissary services for the benefit and convenience of plant employees rather than the general public. Sometimes dining tables are situated adjacent to the vending area.

Nationwide, on the contrary, operates and services only manually operated in-plant and industrial feeding facilities and snack bars. While the industrial employer owns the equipment for manual food preparation at the cafeteria locations, Nationwide both owns and operates the snack bar facilities where some prepackaged food items, including fluid milk, are dispensed automatically while certain fresh foods are prepared on the site. Nationwide charges for its service, in either event and generally as its sole compensation, a ''management fee'' which may be either a flat fee or a percentage of gross receipts. All Nationwide facilities, which are also maintained and operated principally for the benefit and convenience of plant personnel, are self-service cafeteria style.

Neither division is actively or directly engaged in processing and packaging fluid milk or cream, and, although the purchasing methods of the two divisions differ, it is conceded that ultimately all fluid milk purchased by both or

either of them is sold to consumers at retail prices. Under the facts and circumstances hereinabove disclosed, we do not believe it can be seriously contended that Automatic Canteen will, by the revocation of the distributor's license it heretofore enjoyed, be effectively prevented from doing business. Indeed, it would appear unfair to others engaged in retail sales of these products to face competition from one similarly situated but who is enabled to obtain its milk supplies at preferentially lower subdistributor prices.

The evidence supports the finding that Automatic Canteen, acting by and through its Canteen and Nationwide divisions, "owned, operated and controlled in the State of California, a number of establishments where fluid milk is sold only for consumption on the premises, . . ." ▮ The trial court exercised its independent judgment: ". . . our power begins and ends with a determination of whether there is any substantial evidence to support the order and decision . . ." (*Morris* v. *Board of Medical Examiners,* 230 Cal. App.2d 704, 712 [41 Cal.Rptr. 351].) The principle applies with equal vigor to cases such as the instant action wherein the stipulated facts are evidentiary and findings are, therefore, appropriate. (*Hugo Neu Corp.* v. *County of Los Angeles,* 241 Cal.App.2d 703, 706-707 [50 Cal.Rptr. 916].)

▮ It accords with the purpose and intent of the Milk Stabilization Act to conclude that only those "persons" who function as distributors and are not expressly disqualified under section 4216 may be licensed as distributors. "Persons" as defined by section 4222, clearly refers to a corporation, natural person, association, or other legally established form of business unit; a "division" is not an independent legal entity but rather a corporate ambiguity. Chapter 17 of the Agricultural Code consistently speaks of a distributor in terms of a person except in one or two instances which it clearly distinguishes, and we therefore perceive that only a person may thus qualify as a distributor.

▮ Obviously, then, when section 4216, subdivision (2), refers to an "establishment" where fluid milk or cream is sold solely for consumption on the premises, we may logically infer that this means, or includes, a person who owns or controls such premises. ▮ Presented with this reasonable construction, we are not at liberty to apply another which would render the section meaningless or so ambiguous as to defy application since that would defeat rather than imple-

ment the statutory scheme. (*Wemyss* v. *Superior Court*, 38 Cal.2d 616, 621 [241 P.2d 525]; *Paraco, Inc.* v. *Department of Agriculture*, 118 Cal.App.2d 348, 357 [257 P.2d 981].)

The manner in which the separate divisions of Automatic Canteen function and the degree of autonomy exercised by each is irrelevant except insofar as it may serve to establish that one or both of them include operations where fluid milk or cream is sold at retail for consumption solely on the premises. We apply the test of section 4216, subdivision (2), to the comprehensive activities of Automatic Canteen since that is the "person" to which the statute has reference, and not the divisions separately.

The local divisions of Automatic Canteen service specific institutional premises where it may safely be said that fluid milk is sold at retail "only for consumption on the premises." Obviously, the object in establishing such retail outlets for fluid milk products is primarily to serve the convenience of employees. Access is limited to such persons and it reasonably may be anticipated that they will consume their purchases on the institutional premises if not in the immediate vicinity of the dispensing machinery. It is, in any event, conceded that this is the custom at least with respect to the in-plant cafeteria and snack bar installations operated by Nationwide, and viewing Automatic Canteen's operations as a whole, we find that the company falls within the exclusion of section 4216 subdivision (2), without regard for the manner in which Canteen division conducts its business.

Automatic Canteen contends that application of the Milk Stabilization Act to revoke its distributor's license deprives the company of due process and equal protection of the laws. We cannot agree. Not only has the act been declared constitutional on its face (*Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal.2d 620 [91 P.2d 577]), but it has been held specifically that the classification thereunder of those engaged in milk sales as distributors and retail stores is neither arbitrary nor unreasonable. (*Ray* v. *Parker*, 15 Cal.2d 275, 283 [101 P.2d 665]; *In re Willing*, 12 Cal.2d 591, 596 [86 P.2d 663].) We therefore find no constitutional defect in the construction of section 4216 subdivision (2) as applied by the Director and adopted by the trial court, even though the result is to deprive appellant of its distributor privileges. [6] ". . . the administrative construction of a statute . . . is entitled to great weight, and courts will generally not depart from such an

interpretation unless it is clearly erroneous." (*Misasi* v. *Jacobsen,* 55 Cal.2d 303, 308 [10 Cal.Rptr. 850, 359 P.2d 282].)

██ "The purpose of the act can be fairly summarized as follows: That the people shall be able to purchase milk at the lowest price at which enough distributors operating with average efficiency will be able to do business at a reasonable profit so as to supply the demand of all the consumers in the marketing area. . . ." (*Challenge Cream etc. Assn.* v. *Parker,* 23 Cal.2d 137, 141-142 [142 P.2d 737, 149 A.L.R. 1203].)

██ We are constrained to confirm an administrative interpretation of the Milk Stabilization Act which is reasonably calculated to promote this purpose and secure to the public an ample flow of fluid milk and cream by assuring the processor and distributor of such products an adequate minimum wholesale price. The operations of Automatic Canteen patently include establishments where such products are sold at retail solely for consumption on the premises, and neither division could effectively be isolated from the permit granted to the parent. It thus becomes incumbent upon all divisions to pay minimum wholesale prices.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 1, 1967.