[Civ. No. 53444. First Dist., Div. One. July 23, 1982.]

RICHARD E. ROMINGER, as Director, etc., Plaintiff and Appellant,
v.
FOREMOST-McKESSON, INC., et al., Defendants and Respondents.

**COUNSEL**

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, Roderick E. Walston, and Clifford T. Lee, Deputy Attorneys General, for Plaintiff and Appellant.

Richard A. Kramer, Alvin T. Levitt, Marilyn Klinger, Steefel, Levitt & Weiss, David J. Brown, Kent M. Roger, Brobeck, Phleger & Harrison, Leonard M. Patterson, Jr., and Allan Zackler for Defendants and Respondents.

## OPINION

**NEWSOM, J.**—The instant appeal is from a judgment of dismissal after sustaining respondents' demurrer without leave to amend to appellant's "Complaint for Injunctive Relief and Civil Penalties," which sought to enjoin implementation by respondents of a distribution and sales agreement, known as the "Foremost/U.G. Dairy Program" (hereinafter Dairy Program). According to the allegations of the complaint, which for purposes of this demurrer we must accept as true, respondent Foremost-McKesson, Inc. (hereinafter Foremost) is a "handler" and "distributor" of milk, licensed under the California Food and Agricultural Code. United Grocers, Ltd. (hereinafter UG) is a member-owned cooperative grocer which provides services to its retail grocer members in Northern California.

On October 6, 1980, respondents initiated a program for sale and distribution of dairy products which had been devised by UG—the "Dairy Program."[1]

Under the program, Foremost processes, packages and delivers dairy products labeled with the UG private "Bonnie Hubbard" brand directly to UG's member stores. Foremost bills UG directly as the purchaser. UG is charged a "net price" for the products purchased; the net price is a reduced rate which is based on a special allowance program provided by Foremost to buyers of private label products. UG, in turn, bills its member stores at a higher, gross price. The program calls for UG to rebate all or part of its special program allowance to its member stores on a quarterly basis.

UG merely performs an administrative or billing function under the Dairy Program; it does not manufacture, process or package the dairy products.

Appellant argues that the Dairy Program implemented by respondents requires UG to act as a "distributor" under the California milk marketing statutes. UG is not licensed as such, and so appellant claims that its activities violate the law and should be enjoined as requested in the complaint.

---

[1]The Dairy Program was conceived by UG, which then solicited bids from Foremost and others to supply milk to UG for resale to its member grocers in accordance with the program. Foremost's bid, as the lowest, was accepted by UG.

The California milk marketing statutes, particularly the provisions of chapters 1-3 of division 21, part 3, of the Food and Agricultural Code,[2] commencing with section 61301, state a comprehensive regulation and licensing scheme for those involved in the production and distribution of dairy products (§ 61810). Of particular importance here are the licensing provisions.

Section 62141 provides that: "The licenses provided for in this article are required for each *handler*." (Italics added.) Section 62143 states in pertinent part: "A *handler* shall not deal in market milk unless such handler first obtains a license from the director for each milk plant owned or operated by the handler." (Italics added.)

Section 62142 defines "handler" as follows: "For purposes of this article, 'handler' shall include any person[3] defined as a handler under section 61826 or any person defined as a distributor under section 61306 that purchases or handles market milk or market cream for processing, manufacture or sale."

UG is clearly not a "handler" as defined in section 61826, which declares that a handler "means any person who ... receives, purchases, or otherwise acquires ownership, possession or control of market milk in unprocessed or bulk form from a producer, a producer-handler, or another handler for the purpose of manufacture, processing, sale, or other handling,..." As appellant concedes, UG cannot be classified as a "handler," because it does not receive milk in unprocessed or bulk form.[4]

Accordingly, only if UG is considered a "distributor" under the code is the limited requirement of section 62141 operative here.

Section 61306 states, in pertinent part: "'Distributor' means any person that purchases or handles market milk, market cream or any dairy

---

[2]All statutory references herein are to the California Food and Agricultural Code unless otherwise indicated.

[3]According to section 61834, "'Person' means any individual, firm, corporation, partnership, trust, incorporated or unincorporated association, nonprofit cooperative association, nonprofit corporation, or any other business unit or organization."

[4]According to section 61823, "bulk market milk" is "market milk which has not been pasteurized or packaged, ... and is ... delivered, in bulk, in tanks, cans or other bulk containers." The milk which UG and its member grocers receive from Foremost is pasteurized and packaged.

product for processing, manufacture, or sale." Section 61306 also specifically provides: "Distributor does not, however, include any of the following: (a) Any retail store or wholesale customer which is not actively and directly engaged in manufacturing, processing, or packaging of milk, cream or any dairy product."[5]

■ The Dairy Program plainly does not call for UG to manufacture, process or package dairy products. Still, appellant suggests that UG must be classified as a "distributor" for purposes of the milk marketing statutes, in spite of the contrary language contained in sections 61306 and 62142.

Section 61306 specifically limits the definition of "distributor" to any "person" that receives dairy products "for processing, manufacture *or sale.*" (Italics added.) UG plainly does not process or manufacture the

---

[5]In full, section 61306 reads: "'Distributor' means any person that purchases or handles market milk, market cream, or any dairy product for processing, manufacture, or sale. It includes brokers and agents and the nonprofit cooperative associations described in Article 2 (commencing with Section 61331) of this chapter in the transactions in which such article provides that the associations are distributors. It also includes any person who regularly operates mobile vehicles on routes predominantly for sales of market milk, market cream, or dairy products on such routes to wholesale customers, or directly to consumers at their homes. Distributor also means any of the following: [¶] (a) Any person operating, owning, or servicing automatic vending machines dispensing less than quart containers of market milk or market cream, if the market milk or market cream such person sells or distributes through other than vending machines, in retail stores, or establishments it owns, operates, or controls, is purchased by such person at no less than wholesale prices. The sale of market milk or market cream through an automatic vending machine, which market milk is sold principally or primarily for consumption on or adjacent to the premises where sold, shall not be deemed a sale by or at a retail store or establishment, whether or not such market milk or market cream is sold in conjunction with other food products; [¶] (b) Any person who refrigerates, stores, or assembles individual order allotments of market milk or market cream, in containers of less than one quart, at a fixed, established business location prior to transportation of such market milk or market cream in which mobile vehicles on regularly operated routes not predominantly for sales of market milk or market cream on such routes, from which mobile vehicle such market milk or market cream is sold, on such routes, in containers of less than one quart, directly to consumers; [¶] (c) Any person whose primary and regular business is the sale of supplies to documented or foreign registry vessels in any transaction where such person refrigerates, stores, or assembles individual order allotments of market milk or market cream at a fixed established business location and thereafter transports such market milk or market cream to documented or foreign registry vessels. [¶] (d) A retail store or a wholesale customer only as to milk, cream, or any dairy product that is actively and directly processed, manufactured, or packaged by such retail store or wholesale customer. [¶] Distributor does not, however, include any of the following: [¶] (a) Any retail store or wholesale customer which is not actively and directly engaged in manufacturing, processing, or packaging milk, cream, or any dairy product. [¶] (b) Any producer that delivers milk or cream only to a distributor or manufacturer.'"

products it receives; it does, however, purchase milk in accordance with the Dairy Program for the purpose of "sale" to its member grocers. Thus, were it not for the exclusion expressly stated in section 61306 for any "retail store or wholesale customer which is not actively and directly engaged in manufacturing, processing, or packaging milk, cream or any dairy product," we would find the licensing requirement applicable.

UG clearly falls within the definition of a "wholesale customer" stated in section 61317 of the code, which provides that, "'Wholesale customer' means any person, including a distributor, that buys packaged milk, cream or any dairy product from a distributor or manufacturer for resale to consumers or other wholesale customers."[6] And, the Dairy Program, as described in appellant's pleading, does not contemplate that UG manufacture, process, or package the dairy products which it purchases from Foremost. Under the Dairy Program, UG buys milk which has already been processed and packaged by Foremost. UG acts as nothing more than a milk wholesaler.

Despite the unambiguous statutory language, appellant insists that the legislative intent of the milk marketing statutes is to treat milk brokers like UG as "distributors," and impose a license requirement. Appellant submits that the comprehensive statutory milk marketing scheme seeks to prohibit unlicensed distribution of dairy products which would otherwise occur under the Dairy Program, and that licensing should be required of any person, including a "wholesale customer" who *resells* milk dairy products to other *wholesale* customers, as is the case here.

While cognizant of the recognized goal of the milk marketing statutes to provide a comprehensive scheme applicable to the entire marketing chain, we cannot ignore the clear and explicit language of the pertinent statutes. Only "handlers," as defined in sections 62142 and 61306, must be licensed. "Wholesale customers" within the meaning of sections 61317 and 61839 need no license to operate. "Handlers" include "distributors" (§ 62142), but under section 61306 a "wholesale customer which is not actively or directly engaged in manufacturing, processing, or packaging milk" is not a "distributor."

---

[6]Section 61839 similarly defines "wholesale customer" as "any person, including a distributor, that buys packaged milk, cream or any dairy products from a handler, manufacturer or distributor, as defined in section 61306, for resale to consumers or other wholesale customers."

Nor does such an interpretation of sections 61306 and 62142 contravene the general intent which underlies the comprehensive milk marketing scheme. In our view, a reasonable construction of section 61306 leads to the conclusion that the Legislature intended to closely monitor those involved in the manufacturing, processing, or packaging of dairy products by imposing the license requirement. Accordingly, "wholesale customers" merely engaged in resale of previously processed and packaged dairy products, such as UG, need not be subjected to such scrupulous state supervision in order to further the statutory goal of insuring an adequate and healthful supply of dairy products. It requires no distortion of the legislative intent to conclude that there is not the need to subject "wholesale customers," who only pass processed dairy products along in the marketing chain, to the high degree of state scrutiny reserved for manufacturers, processors and packagers. (See *In re Willing* (1939) 12 Cal.2d 591, 596 [86 P.2d 663].)

We further note that such "wholesale customers" do not escape regulation altogether; their business practices and price structures in fact are carefully and comprehensively regulated by statutes (§ 61371 et seq.) and regulations promulgated by the director of the Food and Agriculture Department. (Cal. Admin. Code, tit. 3, ch. 3, subch. 3). Appellant's argument that widespread destabilization of the dairy industry and contravention of the milk marketing statutes will result if UG is permitted to operate without a distributor's license is thus found unpersuasive.

In light of the exclusion stated in section 61306, we conclude that regulation, not licensing, of a wholesale customer not actively and directly engaged in manufacturing, processing or packaging of milk is all that the milk marketing statutes mandate. To hold otherwise would amount to a rewriting of the statute, and violate interpretive guidelines by treating the enumerated section 61306 exclusion as surplusage. In so concluding, we are mindful of the deference owed appellant's administrative construction of the statute—appellant being administratively charged with such interpretation in the first instance. (*Mel* v. *Franchise Tax Board* (1981) 119 Cal.App.3d 898, 909 [174 Cal.Rptr. 269]; *Misasi* v. *Jacobsen* (1961) 55 Cal.2d 303, 308 [10 Cal.Rptr. 850, 359 P.2d 282].)[7]

---

[7]Nothing in the case of *Automatic Canteen Co.* v. *Department of Agriculture* (1966) 247 Cal.App.2d 18 [55 Cal.Rptr. 857] alters our conclusion, particularly since we find no evidence that UG has taken advantage of its status as a distributor to obtain unfair competitive advantage.

We consider our interpretation particularly appropriate, where, as here, the statute imposes a license requirement and so must be strictly construed against the government and limited to the plain import of the language used by the Legislature. (*People* v. *Vis* (1966) 243 Cal. App.2d 549, 554 [52 Cal.Rptr. 527]; *Hughson Con. Milk Co.* v. *State Board* (1937) 23 Cal.App.2d 281, 291 [73 P.2d 290].)

The judgment is affirmed.

Elkington, Acting P. J., and Bancroft, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.