[Civ. No. 22795.   Second Dist., Div. Three.   Sept. 26, 1958.]

HAROLD SENTELL et al., Respondents, v. W. C. JACOB-SEN, as Director of the State Department of Agriculture, et al., Appellants.

Edmund G. Brown, Attorney General, and Delbert E. Wong, Deputy Attorney General, for Appellants.

Gordon, Knapp & Gill and Joseph C. Gill for Respondents.

WOOD (Parker), Acting P. J.—On October 1, 1956, the Director of Agriculture made an order (No. 63) determining minimum prices for packaged fluid milk in the Los Angeles County Marketing Area. The order provided that, in sales by a processor-distributor to a subdistributor, the minimum price for a quart of such milk was 15 cents, and the minimum price for a half gallon of milk was 29.5 cents.

The plaintiffs, who are wholesale subdistributors of fluid milk within said area, sought to enjoin the director and certain members of his staff from enforcing the portion of the order relating to the minimum subdistributor prices for milk in quart and half-gallon containers. They also sought to enjoin them from determining, in the future, minimum prices for packaged fluid milk sold by processor-distributors to subdistributors.

The complaint alleged that defendants, in fixing the minimum subdistributor prices, acted arbitrarily and failed to regularly pursue their statutory authority in that they fixed such prices upon the basis of the cost of packaging milk in fiber containers rather than upon the basis of the lower cost of packaging milk in glass containers.[1]

The trial court found that the minimum subdistributor

---

[1]The complaint also alleged that the order violated provisions of the federal and the state Constitutions. The court found against plaintiffs on those issues, and such findings are not involved on appeal.

It was also alleged that there were other errors in determining the minimum prices. The trial judge stated, in the findings, ''That with respect to other issues of fact presented by the pleadings and on which evidence was received, the Court makes no Findings, it being of the view that additional Findings are unnecessary and therefore immaterial in light of the other Findings hereinabove made.''

prices (for a quart and half gallon), fixed by the order, were based upon the cost of bringing processed milk to the sales platform packaged in fiber containers, and that the cost of bringing a quart of milk to the platform in a fiber container was approximately nine-tenths of a cent higher than the cost of bringing a quart of milk to the platform in a glass container.

One of the conclusions of law was that the defendants, in establishing the minimum subdistributor prices for milk in quart and half-gallon containers, failed to regularly pursue their statutory authority in that they selected the cost of fiber containers rather than the lower cost of glass containers when they were determining the reasonably necessary costs of delivering such milk at the sales platform.

By the judgment the defendants and their successors were enjoined, as follows: (1) from enforcing the minimum subdistributor price schedule which is in said order Number 63: (2) from selecting, in the determination of reasonably necessary costs in any future surveys in said area with respect to such prices, any packaging costs other than ''the packaging costs which will result in the lowest total reasonably necessary costs at the platform''; and (3) from enforcing any minimum price established by any present or future order with respect to such sales unless the defendants comply with the provisions as set forth in subdivision (2) of this judgment (above referred to) in the determination of reasonably necessary costs.

The judgment also directed the defendants to notify all persons, whose names are on the Los Angeles area mailing list of the director, that the subdistributor prices for quart and half-gallon sizes of milk, fixed by order Number 63, are no longer in effect.

Defendants appeal from the judgment.

As above indicated, the issue herein relates to the minimum prices for packaged fluid milk which a processor-distributor of such milk may charge a subdistributor. A processor-distributor, as referred to herein, means a person who processes or prepares fluid milk for resale and who delivers the packaged milk (at the processor-distributor's platform) to wholesale or retail subdistributors. Wholesale subdistributors purchase milk at the sales platform of the processor-distributor and sell the milk to food markets, restaurants, and other wholesale customers. Retail subdistributors purchase milk at the sales platform and sell it to consumers on home-delivery

routes. Wholesale subdistributors usually purchase and sell the milk in fiber containers. Retail subdistributors usually purchase and sell the milk in glass containers. The minimum prices, at the sales platform, for a quart or half-gallon of milk are the same irrespective of whether the container is fiber or glass.

For the purpose of indicating part of the background of the present action, reference should be made to some of the prior orders of the director. Order Number 55, made by the director in December, 1953, determined the minimum prices for packaged fluid milk in sales by processor-distributors to subdistributors. The prices therein were based upon the cost of packaging milk in glass containers. In March and April, 1956, the director held hearings for the purpose of determining whether order Number 55 should be modified. Prior to those hearings the director made cost surveys in order to determine whether there had been any changes in the costs of processing and distributing milk. As a result of the surveys, the director prepared a schedule of proposed minimum prices for fluid milk in sales by processor-distributors to subdistributors; and prior to said hearings (in March and April, 1956) he sent a copy of the schedule to all the distributors and subdistributors in the marketing area. The schedule stated that the proposed minimum prices for milk (during summer months) at the platform of processor-distributors were 14.1 cents for a quart, and 28.2 cents for a half gallon. Those prices were based upon the cost of bringing milk to the platform in glass containers. At the hearings in March and April, 1956, numerous witnesses testified, and documentary evidence was received. Representatives of two processor-distributors testified that all the milk sold by those distributors to subdistributors was packaged in fiber. Representatives of two other processor-distributors testified that substantially all the milk sold by those other distributors to subdistributors was packaged in fiber. A wholesale subdistributor testified that all the milk purchased by him from processor-distributors was packaged in fiber. The president of the Retail Milk Distributors Association testified that there were 78 or 79 members of his association; he believed that all the milk purchased by those members was purchased in glass bottles; most of the milk was purchased by them from processor-distributors. A retail subdistributor testified that, at the hearing, he was representing himself and 12 other retail subdistributors; he delivers milk in glass bottles on a home-

delivery route; there are approximately 300 retail subdistributors in the Los Angeles area; those distributors deliver milk in glass bottles on home-delivery routes; only a small amount of the milk delivered by such distributors is delivered in fiber containers. After those hearings the director made order Number 60 (effective May 10, 1956) which fixed the subdistributor prices at the platform, as follows: 15 cents for a quart, and 29 cents for a half gallon. Those prices were based upon the cost of bringing milk to the platform in fiber containers. (The chief of the bureau of milk control, who presided at the hearings, testified that the minimum subdistributor prices, as stated in order No. 60, were based on the cost of packaging in fiber, rather than on the cost of packaging in glass, for the reasons: (1) that the testimony of several processor-distributors, at the hearings, indicated that practically all the milk sold by them to subdistributors was sold in fiber containers; and (2) it appeared, in connection with stability in the industry, that the subdistributor prices based on the fiber cost were more appropriate.)

According to a statement by counsel for plaintiffs, made at the beginning of the trial herein, these plaintiffs commenced an action (not the present action) on June 2, 1956, to enjoin these defendants from enforcing order Number 60; thereafter the director made orders Numbers 62 and 63 (effective September 1 and October 1, 1956, respectively) which fixed minimum subdistributor prices; the prices in order 62 were the same as in order 60; the prices in order 63 were the same as in order 60, except that the half-gallon price in order 63 was one-half cent higher than in order 60; before the date set for the trial of the action regarding order 60, the present action regarding the then existing order, No. 63, was commenced. (The former action was placed off calendar.)

Appellants (defendants) contend that the portion of the judgment enjoining them from enforcing the minimum subdistributor prices, as stated in order Number 63, is not supported by the evidence. They argue to the effect that the evidence shows that the director did not act arbitrarily, or abuse his discretion, in fixing the minimum subdistributor prices in order Number 63, based upon the cost of packaging milk in fiber containers; and that the director acted pursuant to legislative standards. They also argue to the effect that, in establishing such prices in order Number 63, the director's determination of "reasonably necessary costs" was supported

by substantial evidence in the light of the whole administrative record, insofar as the determination was based upon the cost of packaging milk in fiber containers; and there was substantial evidence, at the administrative hearings, that the fiber container was the predominant package at the platform.

Respondents state in their brief that order 63 has been superseded by subsequent orders but that fact is immaterial herein. ■ This court takes judicial notice of orders of the Department of Agriculture of this state. (See O'Neal v. Seabury, 24 Cal.App.2d 308, 311 [74 P.2d 1082]; Code Civ. Proc., § 1875, subd. 3; 18 Cal.Jur.2d 446-447, § 24.) Orders 71 and 73 made by the director of agriculture (effective June 1 and September 1, 1958, respectively) provide that the minimum subdistributor prices (during summer months) are: 15.2 cents for a quart, and 29.4 cents for a half gallon. Also, each of those orders provides, in part, that: "The costs used in determining the minimum prices contained in this Order include the costs of acquisition and maintenance by the seller of adequate reusable containers, and such costs are spread over the average period of use of such containers. Therefore, such minimum prices do not make any provision for the sale of such reusable containers to the customer. If a distributor or retail store charges a container deposit or a charge above the minimum prices contained herein or sells a reusable container to a customer, such deposit, charge, or container sales price shall be in addition to the applicable minimum prices set forth herein. . . ." It cannot be determined from orders 71 and 73 whether the minimum subdistributor prices were based on the cost of packaging milk in fiber or in glass. It does appear that those orders include a provision regarding reusable containers (that is, glass, etc.), which provision is, in part, that the "costs used in determining the minimum prices . . . include the costs of acquisition and maintenance by the seller of adequate reusable containers . . . ." It might well be that the fact is, with respect to the present existing order, that the minimum subdistributor prices are not based on the cost of packaging milk in fiber (as were the prices in order 60), but are based on a lower cost of packaging in glass. ■ In any event order Number 63, which is referred to in the judgment appealed from, has been superseded by various orders. The issue herein with respect to the minimum subdistributor prices fixed by order Number 63 is now of academic interest only. In O'Neal v. Seabury, supra, 24 Cal.App.2d 308 [74 P.2d 1082], it was

**754**

said at page 311: "An appellate court will not review or determine questions which are moot, since the decision will serve no beneficial purpose to the litigants or at all." The said issue with respect to order Number 63 has become moot, and it need not be determined herein.

Appellant contends further that the permanent injunction restraining the director in the matter of fixing minimum subdistributor prices is invalid in that it is contrary to statutory provisions defining administrative duties of the director in fixing such prices. That portion of the judgment, just referred to, enjoins the director perpetually "From selecting, in the determination of reasonably necessary costs in any future cost surveys . . . with respect to . . . 'subdistributor prices,' any packaging costs . . . at the platform . . . other than the packaging costs which will result in the *lowest total* reasonably necessary costs at the platform." (Italics added.)

■ Section 4355 of the Agricultural Code enumerates various economic factors, in addition to other matters, which are to be considered by the director in determining minimum prices. That section does not include the language included in the judgment herein, namely, "the lowest total reasonably necessary costs." The language in the section is "reasonably necessary costs." That section provides, in part: "In determining minimum wholesale . . . prices for fluid milk . . . the director shall take into consideration the following economic factors operative in such marketing area . . . . (e) The reasonably necessary cost of handling fluid milk . . . incurred by distributors, including all costs of hauling, processing, selling and delivering and reasonable return on necessary capital investment, for each of the several methods of distribution used in such marketing area . . . as such costs are determined by impartial cost surveys, or examination of the books and records . . . of all, or such portion of the distributors in such marketing area as are reasonably determined by the director to be sufficiently representative to indicate the *reasonably necessary costs of sufficient efficient distribution* for such marketing area." (Italics added.) It thus appears that the director is required to determine the "reasonably necessary costs" expended by such portion of the distributors in the area as is determined by the director to be *sufficiently representative* to indicate the "reasonably necessary costs" of efficient distribution in the area. ■ The director is vested with the administrative duty and authority to prescribe and enforce minimum wholesale prices for fluid milk.

(Agr. Code, § 4350.) In performing such duties the director may exercise a wide discretion. (See *Knudsen Creamery Co. v. Brock*, 37 Cal.2d 485, 495 [234 P.2d 26] ; *Brock* v. *Superior Court*, 109 Cal.App.2d 594, 604 [241 P.2d 283].)

In *Knudsen Creamery Co.* v. *Brock, supra,* it was said at page 495: ''Considering the complexities of the administration of the Milk Control Act and the plain intent of the Legislature to give to the director a wide discretion in formulating regulations for the effective production and distribution of milk throughout the state, Order No. 26 must be sustained . . . .''

In *Ray* v. *Parker,* 15 Cal.2d 275 [101 P.2d 665] it was said at page 311: '' 'Courts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.' ''

In the present case the effect of the injunction is to require the director to select, in the future, the packaging cost which will result in the ''lowest total'' reasonably necessary costs at the platform irrespective of (1) whether the lowest cost container is the predominant container in the marketing area, or (2) whether the lowest cost container is in widespread or general use, or (3) whether there are any other factors in the area which would justify the selection of another kind of container as a part of the ''reasonably necessary costs'' of efficient distribution. The director, in determining packaging costs, will be confronted, of course, with varied combinations of cost factors. It might well be that under some circumstances the cost of packaging which would result in the ''lowest total'' reasonably necessary costs at the platform (as required by the injunction) would not be a proper factor in determining the reasonably necessary cost of sufficient efficient distribution in the area (as required by the statute). Section 4360 of the Agricultural Code[2] provides

---

[2]Section 4360 of the Agricultural Code provides, in part: ''Following such hearings, investigation, surveys or examinations authorized above, the director shall establish minimum wholesale . . . prices . . . for distributors . . . which . . . prices shall be sufficient . . . to cover costs, as such costs are described in Section 4355 of this code . . . and reasonable return upon necessary capital investment . . .; provided, however, that whenever the director shall determine from credible evidence that any prices established as hereinabove set forth will not or would not conform to and effectuate the legislative declarations, purposes and intent set forth in this chapter, then he shall instead establish minimum wholesale . . . prices which are higher or lower than those

that under certain circumstances the director may fix minimum wholesale prices higher or lower than the "reasonably necessary costs" fixed pursuant to said section 4355 (above mentioned); provided he shall determine in his judgment and shall find in writing that such higher or lower minimum prices (1) will tend to maintain certain efficient conditions (therein specified) in the distribution of fluid milk, (2) will not tend to induce certain unfair trade conditions (therein specified), and (3) will tend to encourage the efficient marketing of fluid milk.

In the present case the injunction, specifying a method to be followed by the director in fixing future minimum prices, improperly restricted the director in the exercise of the discretion vested in him as an administrative officer. The court erred in granting that injunction.

Reference should be made to the position plaintiffs occupy in asserting that the minimum prices should have been based on the cost of packaging milk in glass containers. Plaintiffs, as wholesale subdistributors, buy milk in fiber containers only. Orders 60 and 63 fixed the minimum subdistributor prices upon the basis of the cost of packaging milk in fiber containers. The cost of packaging milk in glass containers was less than the cost of packaging in fiber (about nine-tenths of a cent less per quart). Plaintiffs, who use only fiber containers, are complaining herein because the director did not fix the minimum prices on the basis of the lower cost of packaging in glass. It is to be noted that retail subdistributors, who usually buy milk in glass containers and who are required to pay the fiber container prices, are not parties to this action and apparently are not contending that the director should have fixed the prices on the basis of packaging in glass. Orders 60 and 63 provided that retail subdistributors

sufficient to cover said costs and reasonable return on capital investment, upon the condition that he shall determine in his judgment and shall find in writing with respect to such higher or lower minimum prices: (a) That such minimum prices will tend to maintain in the business of distributing fluid milk . . . such reasonably efficient retail stores and distributors of fluid milk . . . as the director finds necessary to insure to consumers . . . sufficient distribution facilities to supply the quantity of fluid milk . . . required by such consumers without requiring such consumers to pay more for their supplies of such fluid milk . . . than is necessary to maintain adequate and efficient distribution facilities of such marketing area. (b) That such minimum prices will not tend to induce or authorize the development of unfair trade practices, unfair competition, conditions of monopoly or combinations in restraint of trade, and that such minimum prices will tend to encourage the orderly and efficient marketing of fluid milk. . . . ."

should make a service charge of five cents on each sale at a single delivery location.)  If the minimum prices had been fixed on the basis of packaging in glass, the plaintiffs might have had the advantage of buying fiber packages of milk at the lower cost of glass packages.  Plaintiffs assert, however, in substance that the minimum price is only a minimum, and that even if the minimum price were based on the cost of the glass package, the processor-distributors could charge more than the minimum for fiber packages and thereby require plaintiffs to pay a price based on the higher cost of the fiber package.  It is to be noted, however, that plaintiffs alleged in their complaint that the milk market has been so highly competitive that minimum prices are in practical effect the maximum prices.  If the minimum prices are controlling, as plaintiffs allege, and if the minimum prices are based on the cost of the glass package, as plaintiffs assert they should be, the plaintiffs would have the advantage of buying the fiber packages (which they use exclusively) at the lower cost of glass packages.  Also, it is to be noted that under orders 60 and 63 (of which plaintiffs complain and which were based on the cost of packaging in fiber) plaintiffs' gross margin of profit was greater than it was under the prior order 55 (which was based on the cost of packaging in glass).

In view of the conclusions hereinabove stated it is not necessary to discuss other contentions on appeal.

The appeal with respect to the portion of the judgment enjoining defendants from enforcing order Number 63 (as to which portion the issue has become moot) is dismissed.  The judgment is reversed as to all other portions thereof.  Appellants to recover their costs on appeal.

Vallée, J., concurred.