[Civ. No. 27706. First Dist., Div. One. May 11, 1971.]

SHORT STOP, INC., Plaintiff and Respondent, v.
JERRY W. FIELDER, as Director, etc., Defendant and Appellant.

436

## COUNSEL

Aiken, Kramer & Cummings and Fred V. Cummings for Plaintiff and Respondent.

Thomas C. Lynch, Attorney General, Walter S. Rountree, Assistant Attorney General, Roderick E. Walston and Ronald V. Thunen, Jr., Deputy Attorneys General, for Defendant and Appellant.

Steck & Marston and Emil Steck, Jr., as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

**SIMS, J.**—The State Director of Agriculture has appealed from a judgment which ordered the issuance of a peremptory writ of mandamus remanding to the director proceedings which led to the director's order of July 1, 1969 establishing minimum prices and a schedule of discounts for fluid milk and other milk products, commanding him to either set aside his order or certain provisions thereof relating to quantity discounts, and further commanding him, if new quantity discounts are established, to provide for discounts which are no more than those which give full effect to cost differences in respect to single deliveries of varied quantities to wholesale customers. The director contends that the provisions of section 62482 of the Agricultural Code[1] which purport to limit quantity discounts in the manner

[1]Agricultural Code section 62482 reads as follows: "Minimum wholesale price schedules for fluid milk, fluid cream, or both, which are established by the director,

provided in the judgment, are subject to and controlled by the director's general power to fix prices "to conform to and effectuate the legislative declarations, purposes and intent set forth in" chapter 2 of part 3 of division 21 of the Agricultural Code, popularly known as the Milk Stabilization Act. (See § 62487.)[2] For the reasons hereinafter set forth it is concluded that the trial court properly interpreted the code provisions. The judgment must be affirmed.

The findings of fact and the judgment recite, "The transcript of the hearing [preceding the making of the order] with exhibits, the findings, and the order of respondent effective July 1, 1969 establishing minimum prices and a schedule of discounts for fluid milk and other milk products, were introduced into evidence. It was stipulated by the parties that by reason of the quantity of its purchases, petitioner receives less than the maximum discount allowable pursuant to such order and that the difference between petitioner's discount and the discount given purchasers of

may provide for quantity discounts. Such discounts shall be no more than those which give full effect to cost differences in respect to single deliveries of varying quantities of fluid milk, fluid cream, or both, to wholesale customers."

(All further references are to sections of the Agricultural Code unless otherwise noted.)

[2]Section 62487 provides: "The minimum wholesale and minimum retail prices shall be sufficient, but not more than reasonably sufficient, to cover costs, as such costs are described in Section 62479, for each of the several methods of distribution, and reasonable return upon necessary capital investment, as shown to the director by the facts which are available to the director from the hearings, investigation, surveys, or examinations for such marketing area which are required in this chapter. The director shall declare such prices effective in the same manner as that which is prescribed in this chapter for declaring producer prices effective unless the director determines from credible evidence that any prices which are established as set forth in this article will not, or would not, conform to and effectuate the legislative declarations, purposes, and intent set forth in this chapter. If he so determines, he shall instead establish minimum wholesale or minimum retail prices which are higher or lower than those which are sufficient to cover the costs and reasonable return on capital investment, without limitations based upon the cost of individual distributors and retail stores which are described in subdivisions (e) and (g) of Section 62479, upon the condition that he shall determine in his judgment and shall find in writing with respect to such higher or lower minimum prices both:

"(a) That such minimum prices will tend to maintain in the business of distributing fluid milk and fluid cream, or both, such reasonably efficient retail stores and distributors of fluid milk and fluid cream, or both, in such marketing area as the director finds are necessary to insure to consumers in such marketing area sufficient distribution facilities to supply the quantity of fluid milk or fluid cream, or both, required by such consumers without requiring such consumers to pay more for their supplies of such fluid milk or fluid cream, or both, than is necessary to maintain adequate and efficient distribution facilities in such marketing area.

"(b) That such minimum prices will not tend to induce or authorize the development of unfair trade practices, unfair competition, conditions of monopoly or combinations in restraint of trade, and that such minimum prices will tend to encourage the orderly and efficient marketing of fluid milk or fluid cream, or both."

larger quantities of milk is greater than the differences in cost of single deliveries of such different quantities of milk. No additional evidence was presented."

The court found as follows: ". . . there is no evidence indicating that the quantity discounts allowed against the minimum wholesale prices are no more than those which give full effect to cost differences in respect to single deliveries of varying quantities of fluid milk to wholesale customers"; and, [ ¶ ] "By reason of the quantity of its purchases, petitioner receives less than the maximum discount allowable pursuant to said order. The difference between petitioner's discount and the discount given purchasers of larger quantities of milk is greater than the differences in cost of single deliveries of such different quantities of milk." The court concluded that the director "committed a prejudicial abuse of discretion in that he established quantity discounts against minimum wholesale prices without evidence indicating that the quantity discounts are no more than those which give full effect to cost differences in respect to single deliveries of varying quantities of fluid milk to wholesale customers." It ordered judgment as outlined above.[3]

The Dairy Institute of California which filed a brief in support of the position of the director seeks to establish by mathematical computations that the prices established in the order do comply with the provisions of section 62482. This argument is not reviewed because ". . . points not urged in the trial court may not be urged for the first time on appeal." (*Damiani* v. *Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780]. See also *Emby Foods, Inc.* v. *Paul* (1964) 230 Cal.App.2d 687, 699-700 [41 Cal. Rptr. 365].) Moreover ". . . an amicus curiae must accept the case as it finds it and . . . a 'friend of the court' cannot launch out upon a juridicial expedition of its own unrelated to the actual appellate record." (*Pratt* v. *Coast Trucking, Inc.* (1964) 228 Cal.App.2d 139, 143 [39 Cal.Rptr. 332]. See also *Eggert* v. *Pacific States S. & L. Co.* (1943) 57 Cal.App.2d 239, 251 [136 P.2d 822].)

It is concluded, therefore, that the order fails to comply with the provisions of section 62482, and is therefore invalid unless authorized by the general provisions of section 62487.

---

[3]The peremptory writ, which follows the terms of the judgment, reads as follows: "YOU·ARE HEREBY ORDERED, on the later to occur of November 1, 1969 or your receipt of this writ, either to set aside your order entitled Central Coast Counties Order Number Seventeen (17), effective July 1, 1969, or to set aside provisions 2 and 3 of Sections B and C of said order, and, if new quantity discounts are established by you which may be allowed against minimum wholesale prices of fluid milk, fluid low-fat milk or fluid non-fat milk, to provide for discounts which are no more than those which give full effect to cost differences in respect to single deliveries of varying quantities, and to take any further action specially enjoined upon you by law; . . ."

"In reviewing a legislative rule a court is free to make three inquiries: (1) whether the rule is within the delegated authority, (2) whether it is reasonable, and (3) whether it was issued pursuant to proper procedure. But the court is not free to substitute its judgment as to the desirability or wisdom of the rule, for the legislative body, by its delegation to the agency, has committed those questions to administrative judgment and not to judicial judgment." (1 Davis, Administrative Law Treatise, § 5.05, pp. 314-315.) The foregoing statement was approved in *Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172 (see p. 175, fn. 2) [70 Cal.Rptr. 407, 444 P.2d 79], where the court stated, "As we pointed out in *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748-749 . . . , we first determine whether the regulation lies within the scope of authority conferred, and, second, '[i]f we conclude that the Administrator was empowered to adopt the regulations, we must also determine whether the regulations are "reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11874.)' Furthermore, these issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with the strong presumption of regularity accorded administrative rules and regulations." (*Id.,* fn. omitted.) Here, as in that case, the regulation, a marketing order, was adopted pursuant to the procedure prescribed by the governing statute (see Agr. Code, §§ 62475-62478). The controversy revolves about whether the general authority delegated to the director to fix prices is curtailed by the express provisions concerning quantity discounts found in section 62482, or whether the provisions of section 62487, which permit prices which are higher or lower than those which are sufficient to cover costs on certain conditions, control the limitation imposed on quantity discounts. A corollary question is whether the price fixing order can be reasonable if it fails to comply with the proscription of section 62482.

The legislative declarations, purposes and intent referred to in section 62487 are found in the general provisions set forth in article 4 of chapter 2. (See *Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 620, 644 [91 P.2d 577]; and *Paul* v. *Wadler* (1962) 209 Cal.App.2d 615, 619 [26 Cal.Rptr. 341].) Section 61871[4] sets forth the general purpose to protect the health and welfare of the people of this state. The following declarations are found in section 61872: ". . . (c) Unfair, unjust, destructive, and demoralizing trade practices have been carried on, and

---

[4]Section 61871 provides: "The production and distribution of fluid milk and of fluid cream and the dissemination of accurate, scientific information as to the importance of milk and other dairy products in the maintenance of a high level of public health, is hereby declared to be a business affected with a public interest. The provisions of this chapter are enacted in the exercise of police powers of this state for the purpose of protecting the health and welfare of the people of this state."

are now being carried on, in the production, marketing, sale, processing, or distribution of fluid milk and fluid cream, which constitute a constant menace to the health and welfare of the inhabitants of this state and tend to undermine sanitary regulations and standards of content and purity, however effectually such sanitary regulations may be enforced"; and "(e) It is the policy of this state to promote, foster, and encourage the intelligent production and orderly marketing of commodities which are necessary to its citizens, including milk, and to eliminate speculation, waste, improper marketing, unfair and destructive trade practices, and improper accounting for milk which is purchased from producers."

Among the specific purposes set forth in section 61875 are: ". . . (b) Authorize and enable the director to prescribe marketing areas and to determine prices to producers for fluid milk or fluid cream, or both, which are necessary due to varying factors of costs of production, health regulations, transportation and other factors in such marketing areas of this state. The cost to distributors within any marketing area, for fluid milk or fluid cream shall be uniform with all other distributors purchasing fluid milk and fluid cream of similar grade or quality under like terms and conditions.

"(c) Authorize and enable the director to formulate stabilization and marketing plans subject to the limitations which are prescribed in this chapter with respect to the contents of such stabilization and marketing plans and to declare such plans in effect for any marketing area.

"(d) Enable the dairy industry, with the aid of the state, to correct existing evils, develop and maintain satisfactory marketing conditions, and bring about and maintain a reasonable amount of stability and prosperity in the production and marketing of fluid milk and fluid cream and provide means for carrying on essential educational activities."

Section 61876 recites: "It is the intent of the Legislature that the powers which are conferred in this chapter shall be liberally construed."

Section 61877 states: "Nothing in this chapter permits or authorizes the development of conditions of monopoly in the production or distribution of fluid milk or fluid cream. In the establishment of the terms and conditions under which fluid milk and fluid cream shall be purchased from producers, and under which distributors and retail stores shall sell and distribute fluid milk or fluid cream, such terms and conditions shall be those which will, in the several localities and markets of the state, and under the varying conditions of production and distribution, insure an adequate and continuous supply of pure fresh wholesome fluid milk and

fluid cream to consumers of the fluid milk and fluid cream at fair and reasonable prices."

The general price fixing power is conferred by section 62471 which states, "Pursuant to the declaration and statements of facts, policy, and purposes which are set forth in this chapter, the director may prescribe and enforce minimum wholesale and minimum retail prices for fluid milk, or fluid cream, or both, as set forth in this article, and enforce the provisions of this article." Factors to be considered in price fixing are set forth in sections 62479, 62480 and 62481. Sections 62482, 62483 and 62484 deal with quantity discounts for wholesale prices, retail prices for home delivery, and retail prices for retail stores respectively. The general standard set forth in section 62487 (see fn. 2 above) reads, "The minimum wholesale and minimum retail prices shall be sufficient, but not more than reasonably sufficient, to cover costs . . . and reasonable return upon necessary capital investment" unless the director makes the findings required by the last two paragraphs of that section.

The content of the foregoing provisions has been summarized as follows: "The purpose of the Milk Stabilization Act . . . is to eliminate unfair, unjust, destructive and demoralizing trade practices in the producing, marketing, sale, processing or distribution of milk, which tend to undermine regulations and standards of the content and purity. . . . The director is authorized to prescribe marketing areas . . . and to determine prices which are necessary to the varying factors in the cost of production and distribution, provided that the cost to distributors within any marketing area shall be uniform with all other distributors purchasing fluid milk and fluid cream of similar grade or quality under like terms and conditions. . . . The act is to bring about a reasonable amount of stability and prosperity in the marketing of milk, but nothing in the statute shall be construed as permitting or authorizing the development of conditions or monopoly in the production or distribution of milk. The terms and conditions governing the production and distribution of milk shall be such as will insure in the several localities and markets of the state, under the varying conditions of production and distribution, an adequate and continuous supply of pure, fresh, wholesome fluid milk and fluid cream to consumers thereof at fair and reasonable prices. . . ." (*Paul* v. *Wadler, supra,* 209 Cal.App.2d 615, 619. See also *Misasi* v. *Jacobsen* (1961) 55 Cal.2d 303, 309 [10 Cal.Rptr. 850, 359 P.2d 282]; *Knudsen Creamery Co.* v. *Brock* (1951) 37 Cal.2d 485, 490 [234 P.2d 26]; *Challenge Cream etc. Assn.* v. *Parker* (1943) 23 Cal.2d 137, 141-142 [142 P.2d 737, 149 A.L.R. 1203]; *Coke* v. *Reliance Ins. Co.* (1968) 262 Cal.App.2d 406, 408 [68 Cal.Rptr. 741]; and *United Milk Producers* v. *Cecil* (1941) 47 Cal.App.2d 758, 764 [118 P.2d 830].)

"The establishment of minimum prices involves highly technical matters requiring the assistance of skilled and trained experts and economists and the gathering and study of large amounts of statistical information." (*Emby Foods, Inc.* v. *Paul, supra,* 230 Cal.App.2d 687, 694. See also *Misasi* v. *Jacobsen, supra,* 55 Cal.2d 303, 308; *Knudsen Creamery Co.* v. *Brock, supra,* 37 Cal.2d 485, 495; and *Ray* v. *Parker* (1940) 15 Cal.2d 275, 312 [101 P.2d 665].)

"The director's authority to set minimum prices within methods of distribution at higher or lower than the cost plus return on investment standard in order to achieve stability has been repeatedly upheld by the courts . . . one of the primary purposes of price setting under the Act is to insure a sufficient supply of milk (Agr. Code, §§ 4205, 4360 [present §§ 61876, 61877 and 62487])." (*Emby Foods, Inc.* v. *Paul, supra,* 230 Cal.App.2d 687, 698-699. See also *Misasi* v. *Jacobsen, supra,* 55 Cal.2d 303, 309; and *Sentell* v. *Jacobsen* (1958) 163 Cal.App.2d 748, 754-755 [329 P.2d 932].)

In this case the director made a finding that the attacked order "is proper and necessary to accomplish the aforesaid purposes [of Chapter 2], and that each and every part of said amended Order conforms with the standard therefor; . . ." He expressly found that prices for sales in containers of designated sizes by one distributor to another, or for retail sales at a producer's ranch are higher than those sufficient to cover costs; that prices for other sales, including fluid milk sold wholesale in designated containers, are lower than those sufficient to cover costs; and that prices established for certain milk sold at retail stores are higher than overall cost of doing business. He then found with respect to the prices above and below cost in accordance with the recitals in paragraphs (a) and (b) of section 62487 (see fn. 2 above).

The director asserts that any variation from cost differences in the quantity discounts is warranted because of the above findings, and that the evidence sustains the findings with respect to that discrepancy, because the record shows that unless quantity discounts in excess of cost differences are given to chain stores, any chain store may vertically integrate by establishing or purchasing its own producing and distributing facility, and that thereupon producers and distributors who now serve both chain and individual retail outlets will be driven out of business and will leave the individual retailers without a source of supply.

The director contends that his administrative construction of the act, as well as the facts, should be upheld because of the presumption of administrative regularity recognized in *Ralphs Grocery Co.* v. *Reimel,*

*supra* (69 Cal.2d at p. 175). He also relies on *Misasi* v. *Jacobsen, supra,* wherein the court stated, ". . . the administrative construction of a statute by those charged with its interpretation and enforcement is entitled to great weight, and courts will generally not depart from such an interpretation unless it is clearly erroneous. [Citations.]" (55 Cal.2d at p. 308. See also *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756-757 [151 P.2d 233, 155 A.L.R. 405]; and *Emby Foods, Inc.* v. *Paul, supra,* 230 Cal.App.2d 687, 694.)

On the other hand the following principle is well established: "An administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative enactment. [Citations.]" (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com., supra,* 24 Cal.2d 753, 757. See also *Knudsen Creamery Co.* v. *Brock, supra,* 37 Cal.2d 485, 492-493; *Zuber* v. *Allen* (1969) 396 U.S. 168, 183 [24 L.Ed.2d 345, 354, 90 S.Ct. 314]; and *Green* v. *Milk Control Com.* (1940) 340 Pa. 1, 3 [16 A.2d 9].)

■ The language of section 62482 should be interpreted in its natural and ordinary meaning. (See *Oakland Paving Co.* v. *Hilton* (1886) 69 Cal. 479, 491-492 [11 P. 3]; *City of El Monte* v. *City of Industry* (1961) 188 Cal.App.2d 774, 780 [10 Cal.Rptr. 802]; *Malone* v. *State Emp. Retirement System* (1957) 151 Cal.App.2d 562, 564-565 [312 P.2d 296]; and *Pacific Gas & E. Co.* v. *Shasta Dam etc. Dist.* (1955) 135 Cal.App.2d 463, 468 [287 P.2d 841].) In the case last cited the court said, ". . . we believe that the better and more modern rule of construction is to construe a legislative enactment in accordance with the ordinary meaning of the language used and to assume that the Legislature knew what it was saying and meant what it said." (135 Cal.App.2d at p. 468.)

■ "It is well settled, also, that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].)

In *Ralphs Grocery Co.* v. *Reimel, supra,* 69 Cal.2d 172, the court ruled that the authority to promulgate rules that "foster and encourage the orderly wholesale marketing and wholesale distribution of beer" (Bus. & Prof. Code, § 25006) embraced a rule which prohibited manufacturers, importers and wholesalers from granting discounts for quantity purchases (69 Cal.2d at pp. 174-180). The court pointed out the following evils

of quantity discounts. "(1) Many small retailers will take advantage of quantity discounts even if they lack either the turnover or the storage space to assure that all the beer bought at the discount rate can be sold while it is still fresh. Prohibition of quantity discounts removes this inducement to sell inferior beer. (2) In the absence of rule 105(a) chain stores could force suppliers to grant quantity discounts by conditioning the continuation of their lucrative large volume of business on the grant of such rebates. As a result, those retailers unable to buy in such quantities would suffer severe competitive disadvantage and could be eliminated." (*Id.* at p. 177.) The court concluded: "The quantity discount, in the long run, thus tends to decrease the number of competitors at all three levels, the manufacturer, wholesaler, and retailer, and, concurrently, to reduce competition." (*Id.*)

It may be assumed that the Legislature had these evils in mind in expressly prescribing a limitation on quantity discounts when it first authorized the granting of quantity discounts by amendment of former section 4357 in 1955 (Stats. 1955, ch. 1310, § 9, p. 2378; and cf. Stats. 1953, ch. 324, § 4, p. 1563). It also may be noted that these amendments, now found in sections 62482, 62483 and 62484, were adopted contemporaneously with the authority and criteria, now found in section 62487 (former § 4360), for establishing minimum wholesale or retail prices which are higher or lower than those sufficient to cover costs (Stats. 1955, ch. 1310, § 12, pp. 2379-2380; and cf. Stats. 1953, ch. 324, § 4, pp. 1587-1588). It cannot be assumed that the latter provisions were intended to control the former since they were both adopted at the same time.

It has been determined that the provisions authorizing quantity discounts are permissive and not mandatory so that retail store owners cannot insist that they be allowed to grant such discounts (see § 62484). In *Emby Foods, Inc.* v. *Paul, supra,* 230 Cal.App.2d 687, the court stated, in response to the retailer's contention, "In fact, the construction urged by plaintiffs would result in the unreasonable subservience of the broad principles governing the setting of minimum prices and stabilizing the milk industry to the statute authorizing discounts." (230 Cal.App.2d at p. 698.) This is not to say, however, that when the director elects to authorize quantity discounts he can avoid the definite standards prescribed for the discount's application by reference to those broad principles. The same opinion notes, "The cost justification alluded to by plaintiffs could not be the obvious one that it is cheaper to sell in larger quantities, as section 4357 itself recognizes this saving, clearly defining the director's authority *in permissive terms only* and *prescribing a definite standard for the discount's application.*" (*Id.,* second italics added.) Similarly in *Ralphs Grocery Co.* v. *Reimel, supra,* 69 Cal.2d 172 the court, in ruling that the rules governing the sale of beer could deal with the subject of quantity

discounts without any express reference thereto in the governing law, noted the provisions of section 62484 of the Agricultural Code, and also the provisions of section 24871 of the Business and Professions Code which limited certain discounts on the sale of wine to retailers. It stated, "To the extent that the Legislature considers a given problem and determines the best method of dealing with it, it may specifically include its resolution of the matter in statutory law; in sections 62484 and 24871, for example, the Legislature considered the relationship between quantity discounts and the marketing of milk and wine, respectively, and *described with particularity* the administrator's power." (69 Cal.2d at p. 182; italics added.)

In *Zuber* v. *Allen, supra,* the court stated, "Congress has spoken with particularity and provided specifically enumerated differentials, . . ." (396 U.S. at p. 183 [24 L.Ed.2d at p. 354].) It found that the permissible adjustments were limited to compensation for rendering an economic service, and invalidated an attempted adjustment which purported to protect the competitive position of distant milk producers by giving those closer to the market a higher price (*id.,* at p. 188 [24 L.Ed.2d at pp. 357-358]). So here the proposed quantity discounts are particularly unauthorized by the statutory scheme insofar as they exceed cost differences.

*Ralphs Grocery Co.* v. *Reimel, supra,* also distinguishes between price fixing and quantity discounts. It pointed out that the prohibition of the rule "only operates to prevent variations in the price established by the manufacturer or wholesaler." (69 Cal.2d at p. 180.) So here the legislative limitation in sections 62482, 62483 and 62484 does not affect the director's power to fix the basic prices higher or lower than the general standard fixed by section 62487 upon making the required findings of the necessity for such prices. The provisions merely limit the scope of the discounts which may be allowed on the basic price whether it be higher than cost, cost, or lower than cost.

If the limitations specifically imposed by section 62482 interfere with the fulfillment of the general purposes of the act, the remedy lies with the Legislature.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.