[Civ. No. 33436. First Dist., Div. Two. Apr. 1, 1975.]

E. M. CONSUMER CORPORATION et al., Plaintiffs and Appellant, v. C. B. CHRISTENSEN, as Director, etc., Defendant and Respondent.

## COUNSEL

Sanford N. Diller for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick Walston and Richard C. Jacobs, Deputy Attorneys General, for Defendant and Respondent.

Steck & Marston and Emil Steck, Jr., as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**KANE, J.**—This is an appeal from the lower court's judgment denying appellants' petition for writ of mandate and declaring that the marketing order of respondent Director of Agriculture[1] of the State of California ("Director") is constitutional and valid as applied to appellants. The background facts may be stated as follows:

---

[1] Since the trial court action the title of the Director has been amended to "Director of Food and Agriculture" (Food & Agr. Code, §§ 35, 50).

On July 31, 1972, the Northern California Dairy Association requested the Director to hold a public hearing to review the minimum wholesale and retail prices of fluid milk sold in one gallon containers in specific marketing areas.[2] On September 27, 1972, hearing was held before the Director at which extensive documentary and oral evidence were introduced. The evidence demonstrated that while the predominant container for half gallon sales of milk was the fibre container, with regard to sales in one gallon quantities the plastic one gallon container has become widespread, to the extent that those distributors who were not dealing in sales of plastic gallons would soon be forced to so deal. The evidence introduced at the hearing likewise proved that the cost of the plastic one gallon container was considerably higher than the comparable price of two half gallon fibre containers. According to the figures produced by appellants, the cost of a plastic one gallon container was about eight cents, whereas the production cost of two half gallon fibre containers amounted to approximately five cents. Moreover, there were additional costs with regard to the one gallon plastic containers, such as storage space for the unfilled containers; increased handling cost; cost of new filling equipment; under utilization of existing equipment; and an additional risk factor that the use of plastic containers might ultimately be banned. The evidence further established that unless the Director set a cost-justified minimum price for sales of milk in plastic one gallon containers, the result of the increase in plastic gallon sales by the two large vertically integrated chain stores could result in a disrupted market and substantial sales below cost. In reliance on the foregoing evidence the Director concluded that an increase in the minimum price for milk sold in one gallon plastic containers was justified, even though the minimum price thus established was higher than the equivalent price of milk sold in two half gallon fibre containers. Accordingly, by an order effective November 10, 1972 ("Order No. 29"), the Director raised the retail price of one gallon of milk sold in plastic containers by about two cents over the price of milk sold in two half gallon containers. The Director noted, however, that the cost estimates for gallon sales were based on low volume sales; that as sales increased the per unit cost would decline, and as a result the new price relationship determined in Order No. 29 could be expected to be of short duration.

From Order No. 29 appellants filed a petition for writ of mandamus and a complaint for declaratory relief, seeking inter alia a peremptory

---

[2]The specific marketing areas in which the minimum prices were considered and resolved are: Central Coast Counties, Redwood, Kern County, Tulare-Kings and the Central Valley Marketing Areas.

writ of mandamus setting aside the order and a judicial declaration that said order is unconstitutional and invalid. The trial court denied appellants' request on both counts, and the present appeal followed.

Appellants argue on appeal that Order No. 29 is invalid because (1) in setting the minimum price several economic factors were not duly considered (Food & Agr. Code,[3] §§ 62479, 62481-62484), and (2) the proceeding below was tainted with procedural defects.

Before discussing appellants' individual contentions we point out that the setting of the minimum price of milk by Order No. 29 took place pursuant to the Milk Stabilization Act (§ 61801 et seq.). As has often been reiterated, the purpose of the Milk Stabilization Act is to eliminate unfair, unjust, destructive and demoralizing trade practices in the producing, marketing, sale, processing or distribution of milk which tend to undermine regulations and standards of the content and purity. In order to carry out the aforesaid general goal, the Director is authorized to prescribe marketing areas and to determine prices which are necessary to the varying factors in the cost of production and distribution, provided that the cost to distributors within any marketing area shall be uniform (§§ 61872, 61873, 61875, 62081). The act is to bring about a reasonable amount of stability and prosperity in the marketing of milk, but nothing in the statute may be construed as permitting or authorizing monopoly in the production or distribution of milk. Both the statute and cases underline that the terms and conditions governing the production and distribution of milk shall be such as will insure in the several localities and markets of the state an adequate and continuous supply of pure, fresh, wholesome fluid milk to the consumers at fair and reasonable prices (§ 61877; *Short Stop, Inc.* v. *Fielder* (1971) 17 Cal.App.3d 435, 442 [95 Cal.Rptr. 102]; see also: *Knudsen Creamery Co.* v. *Brock* (1951) 37 Cal.2d 485, 490 [234 P.2d 26]; *Paul* v. *Wadler* (1962) 209 Cal.App.2d 615, 619 [26 Cal.Rptr. 341]). The all pervasive end of the act is that ' "the people shall be able to purchase milk at the lowest price at which enough distributors operating with average efficiency will be able to do business at a reasonable profit so as to supply the demand of all the consumers in the marketing area.' " (*Misasi* v. *Jacobsen* (1961) 55 Cal.2d 303, 309 [10 Cal.Rptr. 850, 359 P.2d 282], citing *Challenge Cream etc. Assn.* v. *Parker* (1943) 23 Cal.2d 137, 141-142 [142 P.2d 737, 149 A.L.R. 1203].)

---

[3] Unless otherwise indicated, all references will be made to the Food and Agriculture Code of California.

■ As another preliminary matter it also must be observed that the setting of minimum prices under the Milk Stabilization Act is a quasi-legislative proceeding (*Ray* v. *Parker* (1940) 15 Cal.2d 275, 304 [101 P.2d 665]). As the cases emphasize, with regard to the quasi-legislative acts of administrative agencies " 'judicial review is limited to an examination of the proceedings before the officer to determine whether his action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether he has failed to follow the procedure and give the notices required by law,' " (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83], citing *Brock* v. *Superior Court* (1952) 109 Cal.App.2d 594, 605 [241 P.2d 283]; see also: *Ray* v. *Parker, supra,* at pp. 310-311.)[4] In such instance, the court may not exercise independent judgment on the facts or substitute its judgment for that of the administrative agency. It follows that if the minimum price order is promulgated pursuant to the procedures provided by law, it must be sustained, unless the action of the Director has been arbitrary, capricious or entirely unsupported by evidence (*Sentell* v. *Jacobsen* (1958) 163 Cal.App.2d 748, 754-755 [329 P.2d 932]; *Knudsen Creamery Co.* v. *Brock, supra,* at p. 495). In determining whether the Director has acted arbitrarily or capriciously, this court cannot inquire whether, if it had power to promulgate the same order, it would have adopted some method or formula other than that used by the Director (*Emby Foods, Inc.* v. *Paul* (1964) 230 Cal.App.2d 687, 694 [41 Cal.Rptr. 365]; see also: *Ray* v. *Parker, supra; Pitts* v. *Perluss, supra,* at pp. 834-835).

### Economic Factors

Appellants' first major claim is that the Director acted arbitrarily and capriciously within the purview of the aforestated rules because in setting the minimum price of milk sold in one gallon containers he failed to consider: (a) the cost of the several methods of distribution as such costs are determined by impartial surveys; (b) the estimated purchasing power of consumers in the marketing area; and (c) the estimated amount of the available capacity for processing and distributing milk, all in violation of

[4]The very same principle has been reiterated in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29], the Supreme Court stating: "To be distinguished from adjudicatory determinations of an administrative agency are actions undertaken by such an agency in its legislative capacity. Review by means of section 1094.5 of the Code of Civil Procedure is not available with respect to acts of this kind, and when review is sought by means of ordinary mandate (Code Civ. Proc., § 1085) ' *"judicial review is limited to an examination of the proceedings before the [agency] to determine whether [its] action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether [it] has failed to follow the procedure and give the notices required by law." ' "* (Italics added.)

section 62479.[5] It is also contended that (d) the Director failed to give effect to the legislative policy favoring quantity discounts as provided for in sections 62482 through 62484.[6] Appellants' arguments will be discussed in the order set forth.

(a) *Cost of several methods of distribution:* Appellants' argument under this heading is twofold. First, it is maintained that in determining the minimum price of milk in one gallon plastic containers the Director should have considered not only the cost of half gallon fibre containers which was predominant in that class, but also the production cost of half gallon plastic containers, because the statutory phrase "for each of the several methods of distribution" mandates the consideration of *all* methods of distribution, including the one made in plastic half gallon containers. Appellants' contention cannot be accepted for several reasons.

■ One, it is well settled that the phrase "several methods of distribution" does not apply to the type of container in which the milk is

[5]At all pertinent times below, section 62479 provided in part that "In addition to any other matters which are required to be taken into consideration by *the director,* he *shall, in determining minimum* wholesale and minimum retail *prices for fluid milk* or fluid cream, or both, for any marketing area, *take into consideration* all of the following economic factors which are operative in such marketing area:

"(a) The quantities of fluid milk or fluid cream, or both, which are distributed in such marketing area.

"(b) The quantities of fluid milk or fluid cream, or both, which are normally required by consumers in such marketing area.

"(c) *The estimated purchasing power of consumers* in such marketing area.

"(d) The cost of fluid milk or fluid cream, or both, in such marketing area to distributors and retail stores, which in all cases shall be, respectively, the prices paid by distributors to producers, and the minimum wholesale prices, as established pursuant to this chapter.

"(e) *The reasonably necessary cost of handling fluid milk* or fluid cream, or both, which is incurred by distributors, including all costs of hauling, processing, selling, and delivering and reasonable return on necessary capital investment, *for each of the several methods of distribution which are used in such marketing area in accomplishing such hauling, processing, selling, and delivery,* excluding costs which are not reasonably necessary to efficient operation, *as such costs are determined by impartial cost surveys,* or examination of the books and records, or both, of all, or such portion of the distributors in such marketing area as are reasonably determined by the director to be sufficiently representative to indicate the reasonably necessary costs of sufficient efficient distribution for such marketing area.

"(f) *The estimated amount of the available capacity for processing and distributing fluid milk* or fluid cream, or both, of distributors in such marketing area and the estimated extent to which such available capacity is being used by such distributors." (italics added.)

[6]The sections referred to by appellants set forth in essence that the Director *may* provide for quantity discounts in fixing the minimum wholesale, retail and home-delivery price of fluid milk.

sold, but rather the *means* by which the seller distributes the product to the purchaser, i.e., wholesale, retail, home delivery, etc. This has been clearly spelled out in *Challenge Cream, etc. Assn.* v. *Parker, supra,* at page 144, where, in construing an almost identical phrase contained in the predecessor of the section in dispute, the Supreme Court stated: "the words in section 736.12, *supra,* 'by the several methods used in such marketing area in accomplishing such hauling, processing, selling and delivery,' reasonably *refer only to the variations of method involved in serving wholesale, retail store, and home-delivery customers."* (Italics added; see also *Misasi* v. *Jacobsen, supra,* 55 Cal.2d at p. 312.)

■ Two, it is likewise established that while the cost of the container in which milk is marketed is a proper factor in setting the minimum price for a certain quantity and quality of milk (*Paul* v. *Wadler, supra,* at pp. 622-623), the Director may not consider as a cost factor any differential in the type of container in which milk is sold. The minimum price for the sale of milk products must be based upon the *predominant* container for each amount of milk sold (*Challenge Cream, etc. Assn.* v. *Parker, supra,* at p. 145; *Sentell* v. *Jacobsen, supra.*)

Appellants' alternative argument that, in the case at bench the costs involved in "each of the several methods of distribution" were not duly regarded because the Director took into account only the cost factors pertaining to the wholesale and retail prices, but failed to examine the cost factors relative to the so-called "dock" level operation as carried on by appellants, is not tenable either. As indicated in the record, the hearing in dispute was called for the sole purpose of considering minimum wholesale and retail prices. In addition, the Director consistently recognized that the operation of a distributor who sells his own product at a store or drive-in dairy (so called "dock" operation) is different from that of a wholesale distributor (cf. *Misasi* v. *Jacobsen, supra*). In accordance therewith, Order No. 29 does reflect the difference and sets the minimum price charged at the "dock" in an amount less than the retail store price.

■ *(b)-(c) Consideration of the estimated purchase power and estimated available capacity for processing and distribution:* Appellants next contend that the Director proceeded in violation of the statute because he failed to consider the estimated purchasing power of the consumers in the pertinent marketing areas and the estimated amount of the available capacity for processing and distributing milk products. (§ 62479, subds. (c) and (f).) This contention is meritless.

It is well known that in establishing minimum prices the Director is not limited to act on the facts adduced at the price hearings, but may utilize previous orders and other data kept by him on the milk industry (*Emby Foods, Inc.* v. *Paul, supra,* at p. 695; *Brock* v. *Superior Court, supra,* at p. 606). In consonance with these principles, the Director received evidence adduced at the previous July 17, 1972, hearing which, in turn, incorporated the transcript of the January 4, 1972, hearing. The January 4, 1972, hearing demonstrates that the Director considered both the estimated amount of available capacity for processing and distributing milk (§ 62479, subd. (f)) and the estimated purchasing power of consumers (§ 62479, subd. (c)). It is of considerable significance that appellants were present at the January 4, 1972, hearing, were offered an opportunity to question the panel regarding the exhibits, but raised no objection to, or sought any further information concerning, the exhibits. As a consequence, appellants are foreclosed from raising objections as to the exhibits at the trial and/or on appeal (*Brock* v. *Superior Court, supra,* at pp. 608-609; *Ray* v. *Parker, supra,* at pp. 305-310).

■ (d) *Quantity discounts:* Appellants also contend that the legislative policy favoring quantity discounts requires that the decision of the Director be invalidated. We disagree.

First, it is to be noted that the provisions which authorize quantity discounts are not mandatory, but only permissive (§§ 62482-62484; see also: *Short Stop, Inc.* v. *Fielder, supra,* at p. 445; *Emby Foods, Inc.* v. *Paul, supra,* at p. 698). Secondly, the quantity discounts are applicable only where the same quantity is involved *and* all other factors are equal. However, in the case at bench it was amply demonstrated that the sales in one gallon plastic containers constituted a more expensive method of marketing milk than the comparable sales in two fibre half-gallon containers. As a consequence, the cost factors were not the same in the two categories under dispute.

■ Finally, we observe that aside from the foregoing considerations Order No. 29 may not be disturbed on appeal for an additional reason. As frequently stressed in cases, the establishment of minimum prices involves highly technical matters requiring the assistance of trained experts and economists, and the gathering and study of large amounts of statistical information. One of the primary purposes of price setting under the act is to insure a sufficient supply of milk. As a consequence, the Director's authority to set prices within methods of distribution at higher or lower than the cost plus return on investment standard in order

to achieve stability has been repeatedly upheld by the courts (*Short Stop, Inc.* v. *Fielder, supra,* at p. 443; see also: *Emby Foods, Inc.* v. *Paul, supra,* at p. 694; *Misasi* v. *Jacobsen, supra,* at pp. 308-309; *Sentell* v. *Jacobsen, supra,* at pp. 754-755). Appellants have failed to advance a convincing argument, let alone significant data, which would compel a deviation from the well established principle which requires deference to the decision of the Director in such matters.

## Procedural Matters

The second major thrust of appellants' argument is directed at certain procedural defects allegedly committed in the proceedings below. Thus, it is asserted (1) that appellants were improperly restricted in conducting a full-fledged cross-examination at the administrative hearing, and (2) that the trial court erred in prohibiting interrogatories and in denying the right of Earl Moore, the president of E. M. Consumer Corporation, to testify. The ensuing discussion demonstrates that appellants' procedural complaints are ill founded and must be rejected.

■ With regard to appellants' first claim, we note that under well established law cross-examination is not constitutionally compelled in a quasi-legislative proceeding. All that is required is to accord a *reasonable cross-examination* of all witnesses *insofar as feasible* under the circumstances (*Emby Foods, Inc.* v. *Paul, supra,* at p. 703). The record here demonstrates that in accordance with the foregoing principles the Director generously permitted cross-examination in the case at bench, and appellants availed themselves of the opportunity afforded by the Director. Appellants' insistence that they were deprived of effective cross-examination because they were prohibited from seeing the work-sheets and the body of the information from which the statistical compilations or summaries were drawn is without foundation either. It has been held that the Director is not required to offer in evidence the cost studies resulting from the investigation of his staff, but need only make known the results of these investigations and surveys (*Ray* v. *Parker, supra,* at pp. 303-304; *Emby Foods, Inc.* v. *Paul, supra,* at p. 703). In the case at bench the results of the cost studies were introduced in evidence at the administrative hearing; the members of the hearing panel were available for, and subject to, cross-examination; appellants were offered ample opportunity to question the Director's staff about the exhibits containing the information; and did exercise that opportunity. In view of this record, appellants' complaint that they were deprived of due process of law must be categorically rejected.

■ Appellants' two remaining contentions, i.e., that the trial court erroneously granted respondent's motion for prohibiting interrogatories, and erroneously excluded the testimony of Earl Moore, who would have testified as to matters of common knowledge in the industry, may be likewise briefly disposed of. As has been emphatically underlined before, because in setting the minimum price of milk the Director acts in a quasi-legislative capacity, the court is authorized to review only the administrative record and is not permitted to admit new evidence (*Pitts v. Perluss; Brock v. Superior Court;* both *supra*). As stated in *Beverly Hills Federal S. & L. Assn.* v. *Superior Court* (1968) 259 Cal.App.2d 306, 324 [66 Cal.Rptr. 183]: "*The subject matter of the administrative mandamus petition is limited to a review of the administrative record* to permit the court to decide whether on that record the [administrative action] was supported by substantial evidence. *Evidence outside that record cannot be judicially reviewed. . . . The sufficiency of the evidence . . . stands or falls on the administrative record.*" (Italics added.)

It is apparent that in the case at bench both the interrogatories and the proffered testimony of Earl Moore were matters outside the record of the administrative hearing, and therefore were not subject to judicial review in the trial court. Needless to say, the general rules relating to the judicial review of administrative hearings are mandatory and may not be circumvented by bringing in new evidence under the disguise of judicial notice.[7] We hold that the ruling of the trial court was correct on both counts and the evidence complained of was properly excluded.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

---

[7]Of incidental interest we remark that while the court *may* take judicial notice of facts or events which are matters of common knowledge (Evid. Code, § 452; *South Shore Land Co.* v. *Petersen* (1964) 226 Cal.App.2d 725 [38 Cal.Rptr. 392]), the *duty* of taking judicial notice arises only if the party gives his opponent sufficient notice of the request and furnishes the court with sufficient information to enable it to judicially notice the matter (Evid. Code, § 453). Appellants here failed to show compliance with the statutory notice requirement, and especially failed to indicate that respondent was given ample notice in order to have an opportunity to prepare opposition to the taking of judicial notice and obtaining information relevant to the tenor of the matter to be noticed. This, of course, provides an additional reason for a refusal to take judicial notice in the matter.